**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| VESTTOO LTD., *et al.*[1] | Case No. 23-11160 (MFW) |
| Debtors. | (Joint Administration Requested) |

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER APPOINTING EPIQ
CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING
AGENT EFFECTIVE AS OF THE PETITION DATE**

Vesttoo Ltd. and its affiliated debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "Debtors") hereby submit this application (this "Application"),

pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the

United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 2002 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1(f) of the Local Rules

of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), seeking entry of an order, substantially in the form attached to this

Application as **Exhibit A** (the "Proposed Order"), appointing Epiq Corporate Restructuring, LLC

("Epiq") as the claims and noticing agent in the chapter 11 cases, effective as of the Petition Date

(defined below).  In support of this Application, the Debtors rely upon (i) the *Declaration of

Kathryn Tran in Support of Debtors' Application for Entry of Order Appointing Epiq Corporate

Restructuring, LLC as Claims and Noticing Agent Effective as of Petition Date* (the "Tran

Declaration"), a copy of which is attached to this Application as **Exhibit B**, and (ii) the *Declaration

of Ami Barlev in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day

---

[1]     Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last
four digits of their federal tax identification numbers is not provided herein. A complete list of such information may
be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/vesttoo.

Declaration"),[2] to be filed in these chapter 11 cases.  In further support of this Application, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief sought herein are 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, Local Rule 2002-1(f), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted by the Office of the Clerk of the Bankruptcy Court (the "Clerk") on February 1, 2012 (the "Claims Agent Protocol").

## BACKGROUND

3.      On August 14 and 15, 2023 (the "Petition Date"), the Debtors commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue operating their business and manage their properties as debtors in

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

4.      Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

## **RELIEF REQUESTED**

5.      By this Application, the Debtors seek entry of the Proposed Order appointing Epiq, effective as of the Petition Date, to act as the claims and noticing agent in the Chapter 11 Cases (the "Claims and Noticing Agent") to assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Chapter 11 Cases.  The terms of Epiq's proposed retention are set forth in that certain *Standard Services Agreement* between Epiq and the Debtors, dated as of August 13, 2023 (the "**Retention Agreement**"),[3] a copy of which is attached hereto as **Exhibit C**.  Notwithstanding the terms of the Retention Agreement, the Debtors are seeking to retain Epiq solely on the terms set forth in this Application and the Proposed Order.

6.      By separate application, the Debtors will seek authorization to retain and employ Epiq as administrative advisor in the Chapter 11 Cases, pursuant to section 327(a) of the Bankruptcy Code, as the administration of the Chapter 11 Cases may require Epiq to perform duties outside the scope of 28 U.S.C. § 156(c).

---

[3]      Epiq has agreed to provide claims and noticing services to the Debtors at the rates stated on the pricing schedule attached to the Retention Agreement.  Epiq may provide such services at the regularly scheduled rates to counsel for any official committee appointed in the Chapter 11 Cases, and any other party in interest upon request.

## EPIQ'S QUALIFICATIONS AND NEED FOR EPIQ'S SERVICES

7.     Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases.  Epiq has acted as the claims and noticing agent in numerous recent cases of varying size and complexity, including a number of recent cases filed in this District.[4]

8.     The appointment of Epiq as the Claims and Noticing Agent in the Chapter 11 Cases will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of the Chapter 11 Cases, and relieve the Clerk of these administrative burdens and thus serve to maximize the value of the Debtors' estates for all stakeholders.

## SCOPE OF SERVICES

9.     This Application pertains only to the services to be performed by Epiq under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f).  Any services to be performed by Epiq that are set forth in the Retention Agreement but outside of the scope of 28 U.S.C. § 156(c) are not covered by this Application or by the Proposed Order. Specifically, Epiq will perform the following tasks in its role as the Claims and Noticing Agent, as well as all quality control relating thereto (collectively, the "**Claims and Noticing Services**"), to the extent requested by the Debtors:

a.     Prepare and serve required notices and documents in the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and

---

[4]     *See, e.g.*, *In re Yellow Corporation*, No. 23-11069 (CTG) (Bankr. D. Del.); *In re MediaMath Holdings, Inc.*, No. 23-10882 (LSS) (Bankr. D. Del.); *In re Teligent, Inc.*, No. 21-11332 (KBO) (Bankr. D. Del.); *Southland Royalty Co. LLC*, No. 20-10158 (KBO) (Bankr. D. Del.); *In re RUI Holding Corp.*, No. 19-11509, (JTD) (Bankr. D. Del.); *In re THG Holdings LLC*, No. 19-11689 (JTD) (Bankr. D. Del.); *In re HDR Holding, Inc.*, No. 19-11396 (MFW) (Bankr. D. Del.); *In re Joerns WoundCo Holdings, Inc.*, No. 19-11401 (JTD) (Bankr. D. Del.); *In re Insys Therapeutics, Inc.*, No. 19-11292 (KG) (Bankr. D. Del.); *In re Kona Grill, Inc.*, No. 19-10953 (CSS) (Bankr. D. Del.); *In re WMC Mortgage, LLC*, No. 19-10879 (CSS) (Bankr. D. Del.); *In re F+W Media, Inc.*, No. 19-10479 (KG) (Bankr. D. Del).

4

manner directed by the Debtors and/or the Court, including, if applicable: (i) notice of the commencement of the Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code (as applicable); (ii) notices of transfers of claims; (iii) notices of objections to claims and objections to transfers of claims; (iv) notice of any auction or sale proceeding; (v) notices of any hearings on a disclosure statement and confirmation of a plan or plans of reorganization, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan or plans; and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or the Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Cases;

b.   If applicable, maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs listing the Debtors' known creditors and the amounts owed thereto;

c.   Maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party in interest or the Clerk (within forty-eight (48) hours);

d.   Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim;

e.   Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.   For all notices, motions, orders, and other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service that includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses; (iii) the manner of service; and (iv) the date served;

g.   Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

h.   Maintain an electronic platform for purposes of filing proofs of claim;

i.   Maintain the official claims register for the Debtors (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of

the claim (*e.g.,* secured, unsecured, priority, *etc.*); and (vi) any disposition of the claim;

j.    Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

k.    Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original proofs of claim;

l.    Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m.    File a quarterly updated claims register with the Court in alphabetical and numerical order.  If there has been no claims activity, file a Certification of No Claim Activity.

n.    Relocate, by messenger or overnight delivery, all of the Court-filed proofs of claim to Epiq's offices, not less than weekly;

o.    Upon completion of the docketing process for all claims received to date for each Case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

p.    Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicate names and addresses from such lists;

q.    Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

r.    Assist in the dissemination of information to the public and respond to requests for administrative information regarding the Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

s.    Monitor the Court's docket in the Chapter 11 Cases and, when filings are made in error or containing errors, alert the filing party of such error and work with such party to correct any such error;

t.    If the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of the notice to Epiq of entry of the order converting the Chapter 11 Cases;

u.    Thirty (30) days prior to the close of the Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Epiq as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of the Chapter 11 Cases;

ACTIVE\1602401963.1

v.    Within fourteen (14) days of notice to Epiq of entry of an order dismissing or converting the Chapter 11 Cases or within twenty-eight (28) days of entry of a final decree closing the Chapter 11 Cases, (a) forward to the Clerk an electronic version of all imaged claims; (b) upload the creditor mailing list into CM/ECF; and (c) docket a final claims register. If the Chapter 11 Cases are jointly administered, one combined register shall be docketed in the lead case containing claims of all the chapter 11 cases; and

w.    At the close of these Chapter 11 Cases, if applicable, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to any location reasonably requested by the Clerk's office; and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

10.    The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq.

## COMPENSATION

11.    The Debtors are proposing to compensate Epiq for the Claims and Noticing Services set forth above in accordance with the pricing schedule attached to the Retention Agreement. The Debtors respectfully request that the undisputed fees and expenses incurred by Epiq in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(l)(A) and be paid in the ordinary course of business without further application to or order of the Court.

12.    Epiq agrees to maintain records of all Claims and Noticing Services, including dates, categories of Claims and Noticing Services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any statutory committee, and any party in interest that specifically requests service of the monthly invoices. If any dispute arises relating to the Retention Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from the Court.

ACTIVE\1602401963.1

13.     Before the Petition Date, the Debtors provided Epiq a retainer in the amount of $25,000.  Epiq seeks to first apply the retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $25,000, and thereafter, to hold its retainer under the Engagement Agreement during the Chapter 11 Cases as security for payment of Epiq's final invoice for services rendered and expenses incurred under the Engagement Agreement.

14.     Additionally, under the terms of the Retention Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Epiq and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain circumstances specified in the Retention Agreement, except in circumstances resulting solely from Epiq's gross negligence or willful misconduct or as otherwise provided in the Retention Agreement or Order. The Debtors believe that such indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in the Chapter 11 Cases.

**EPIQ'S DISINTERESTEDNESS**

15.     Although the Debtors do not propose to employ Epiq under section 327 of the Bankruptcy Code pursuant to this Application (such retention will be sought by separate application), Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Tran Declaration, Epiq has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

16.     Moreover, in connection with its retention as Claims and Noticing Agent, Epiq represents in the Tran Declaration, among other things, that:

a.     Epiq is not a creditor of the Debtors;

    b.       Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the Chapter 11 Cases;

    c.       By accepting employment in the Chapter 11 Cases, Epiq waives any rights to receive compensation from the United States government in connection with the Chapter 11 Cases;

    d.       In its capacity as the Claims and Noticing Agent in the Chapter 11 Cases, Epiq will not be an agent of the United States and will not act on behalf of the United States;

    e.       Epiq will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in the Chapter 11 Cases;

    f.       Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

    g.       In its capacity as Claims and Noticing Agent in the Chapter 11 Cases, Epiq will not intentionally misrepresent any fact to any person;

    h.       Epiq shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

    i.       Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

    j.       None of the services provided by Epiq as Claims and Noticing Agent in the Chapter 11 Cases shall be at the expense of the Clerk's office.

17.    Epiq will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## BASIS FOR RELIEF REQUESTED

18.    The Court is permitted to appoint Epiq as Claims and Noticing Agent in the Chapter 11 Cases.  Pursuant to 28 U.S.C. § 156(c), the Court is authorized to utilize agents and facilities other than the Clerk for the administration of bankruptcy cases.  Specifically, 28 U.S.C. § 156(c) provides, in relevant part, as follows:

    Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets,

9

> calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.

11 U.S.C. § 105(a).  Moreover, Bankruptcy Rule 2002, which regulates the notices that must be provided to creditors and other parties in interest in a bankruptcy case, provides that the Court may direct that a person other than the Clerk give notice of the various matters described therein.  *See* Fed. R. Bankr. P. 2002.  In addition, Local Rule 2002-1(f) provides that "[u]pon motion of the debtors or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c)."  Del. Bankr. L.R. 2002-1(f).

19.    The appointment of Epiq as Claims and Noticing Agent will help to expedite and more efficiently facilitate the administration of the Chapter 11 Cases and will relieve the Clerk's office of administrative burdens.  For these reasons, the Debtors respectfully submit that Epiq's appointment as Claims and Noticing Agent is necessary and in the best interests of the Debtors and their estates and will serve to maximize the value of the Debtors' estates for all stakeholders.

## COMPLIANCE WITH CLAIMS AGENT PROTOCOL

20.    The Debtors' selection of Epiq to act as the Claims and Noticing Agent has satisfied the Claims Agent Protocol in that the Debtors have obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise.

## RELIEF AS OF PETITION DATE IS APPROPRIATE

21.    In accordance with the Debtors' request, Epiq has agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval

of its employment and retention, effective as of the Petition Date, so that Epiq can be compensated for services rendered before approval of this Application.  No party in interest will be prejudiced by the granting relief as of the Petition Date as proposed in this Application, because Epiq has provided and continues to provide valuable services to the Debtors' estates during the interim period.

22.     Accordingly, the Debtors respectfully request entry of the Proposed Order authorizing the Debtors to retain and employ Epiq as Claims and Noticing Agent effective as of the Petition Date.

### **NOTICE**

23.     Notice of this motion will be provided to: (a) the Office of the United States Trustee for Region 3 (Attn: Timothy Fox, Esq. (Timothy.Fox@usdoj.gov)); (b) the Office of the United States Attorney for the District of Delaware; (c) each of the parties included on the Debtors' consolidated top 30 creditors list; (d) the Internal Revenue Service; (e) the attorney general for each state in which the Debtors operate; (f) the United States Department of Justice (g) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (h) any other party entitled to notice under Local Rule 9013-1.  The Debtors submit that, under the circumstances, no other or further notice is required.

24.     A copy of this Application is available on (i) the Court's website: www.deb.uscourts.gov, and (ii) the website maintained by the Debtors' proposed claims and noticing agent, Epiq, at https://dm.epiq11.com/vesttoo.

*[Remainder of Page Intentionally Left Blank]*

11

## <u>CONCLUSION</u>

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order, granting the relief requested in this Application, and grant such other and further relief as the Court may deem just and proper.

Dated:  August 18, 2023                    Respectfully submitted,

_/s/ Ami Barlev_____
By: Ami Barlev
Title: Authorized Signatory
Vesttoo Ltd., _et al._

12