## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| VESTTOO LTD., *et al.*[1] | Case No. 23-11160 (MFW) |
| Debtors. | (Joint Administration Requested) |

## MOTION OF THE DEBTORS FOR
## ENTRY OF INTERIM AND FINAL ORDERS
## (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN
## PREPETITION WAGES AND COMPENSATION AND
## MAINTAIN AND CONTINUE EMPLOYEE BENEFIT PROGRAMS,
## (II) AUTHORIZING AND DIRECTING BANKS TO HONOR AND
## PROCESS CHECKS AND TRANSFERS RELATED TO
## SUCH EMPLOYEE OBLIGATIONS, AND (III) GRANTING RELATED RELIEF

Vesttoo Ltd. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), by and through their proposed counsel, DLA Piper LLP (US), hereby submit this motion (the "Motion") for entry of interim and final orders, substantially in forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order"), respectively (i) authorizing the Debtors to: (a) pay unpaid salaries, wages and other compensation, related taxes and withholdings, and reimbursable employee expenses incurred prior to the Petition Date (as defined below) and (b) honor and continue benefit programs for their employees; and (ii) granting related relief. In support of this Motion, the Debtors rely upon a

---

[1]        Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/vesttoo.

*Declaration of Ami Barlev in Support of Chapter 11 Petitions and First Day Pleadings* (the "<u>First Day Declaration</u>")[2] to be filed in these chapter 11 cases, and respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (this "<u>Court</u>") has jurisdiction over these chapter 11 cases, the Debtors, property of the Debtors' estates and this matter under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with article III of the United States Constitution.

3.      Venue of these cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested in this Motion are sections 105(a), 363(b)(1), 507(a), 541, 1107, and 1108 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rule 9013-1(m).

## BACKGROUND

5.      On August 14 and 15, 2023(the "<u>Petition Date</u>"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing its case.

---

[2]      Capitalized terms used but not defined in this motion have the meaning given to them in the First Day Declaration.

6.      The Debtors remain in possession of their property, continue to operate their business and manage their property as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee of unsecured creditors has been appointed.  No date has been set for a meeting of creditors under section 341 of the Bankruptcy Code.

7.      Additional factual background regarding the Debtors, including their business operations, capital and debt structures, and the events leading to the filing of these chapter 11 cases is set forth in the First Day Declaration, which is incorporated in this Motion by reference.

**THE DEBTORS' WORKFORCE, COMPENSATION, AND BENEFITS**

8.      The Debtors' employees are the lifeblood of their business.  They are highly trained and uniquely well-versed in the technical and other aspects of the Debtors' operations.  The Debtors' operations are complex and could not be continued without their employees.

9.      The Debtors seek to eliminate any personal hardship to their workforce resulting from these chapter 11 cases and to minimize the disruption to the Debtors' operations.  As of the Petition Date, certain of the Debtors' prepetition obligations to their workforce and other related third-party service providers (all such wages, benefits, and other obligations described herein, collectively, the "Prepetition Employee Obligations") remain unpaid because, among other things, (a) the Debtors commenced these chapter 11 cases in the middle of a payroll period, (b) paper checks previously issued on account of employee-related obligations may not have been presented for payment or may not have cleared the banking system, (c) amounts related to prepetition services, while accrued in whole or in part, had not yet become due and payable by the Debtors, and (d) amounts deducted or withheld from Employee (as defined below) paychecks were not then due to be paid to the intended third-party recipient or bank account, including (i) payments on

3

behalf of the employees in respect of the Employee Benefit Programs (as defined below) or amounts due to third parties in connection therewith, and (ii) income, garnishment, state disability, unemployment and other taxes for remittance to the appropriate federal, state or local taxing authorities.

10.     By this Motion, the Debtors seek to pay all Prepetition Employee Obligations and related accrued administrative fees, and to continue to meet their obligations under the Employee Benefit Programs (as defined below).  The Debtors' employees rely on the compensation and benefits they receive through the programs described in this Motion to pay their daily living expenses and support their families.  Granting the relief requested will enable the Debtors to maintain morale, enhance the Debtors' ability to retain and attract their valuable workforce, and otherwise eliminate any personal hardship as a result of these chapter 11 cases which, in turn, will maximize value for the benefit of all stakeholders, including the employees.

11.     More specifically, the Debtors seek authority to pay, remit, and/or honor the accrued and unpaid Prepetition Employee Obligations, the entirety of which is due and payable in the first 21 days of these chapter 11 cases.

I.     **Employees**

12.     As of the Petition Date, the Debtors employed approximately 206 employees (the "Employees"), who were full time and salaried Employees. However, the Company has since terminated employees so that only 74 Employees will remain with the Company through these chapter 11 cases.  Of those 74 Employees, 61 are employed in Israel, 6 are employed in the United Kingdom, and 7 are employed in the United States.  None of the Employees are subject to collective bargaining agreements.  During these chapter 11 cases, the Employees will continue to interface with customers and counterparties and respond to inquiries and concerns regarding the

business, ongoing marketing efforts, and administration of these chapter 11 cases. Continued support from these Employees is essential to ensure a smooth transition into chapter 11 and preservation of the value of the Debtors' business.

## II.    Independent Contractors

13.    In addition to the Employees, the Debtors supplement their workforce with various contractors (collectively, the "Independent Contractors"), each of whom is necessary for the ongoing operation of the Debtors' business. Among other positions, the Independent Contractors perform various roles related to specialized consulting and marketing. The Independent Contractors are either contracted directly with the Debtors or through an agency, and for which both remit wages directly to the Independent Contractors. The Debtors retain approximately four Independent Contractors, all of whom play a critical role in the Debtors' day-to-day operations and, thus, to the preservation of value of the Debtors' estates. Certain of the Independent Contractors are utilized on a recurring basis, while others are utilized only as needed. On average, and in the aggregate, the Debtors pay the Independent Contractors in the aggregate approximately $74,886.33 per month. As of the Petition Date, the Debtors estimate that approximately $19,108.50 remains due and owing to the Independent Contractors, all of which is due and payable in the first 21 days after the Petition Date. The Debtors seek authority, but not direction, to pay any prepetition amounts due and owing to each of the Independent Contractors and seek to continue their services postpetition in the ordinary course.

14.    The Debtors have terminated the services of three Independent Contractors, who will be owed severance payments of at least $8,000.00. The Debtors also seek authority to pay these severance payments for the same reasons discussed in Part IV.B.3. of this Motion.

5

### III.   Prepetition Employee Obligations[3]

#### A.   The Debtors' Payroll Obligations

15.   In the ordinary course of business, the Debtors pay their Employees on monthly cycles, except that Employees in the United States are paid according to semi-monthly payment cycles on the 15th and final day of the month (or slightly earlier if these dates fall on a weekend). For the monthly cycles, Employees in Israel are paid on the 3rd of each month, and Employees in the United Kingdom are paid on the 30th of each month, and Employees[4] operating in Bermuda, Dubai, Hong Kong are paid on the 15th of each month, and the Debtors operating in Korea and Japan on the 8th of each month. Employees are paid through the pay date. The Debtors filed these chapter 11 cases in the middle of a pay period. The Debtors filed these chapter 11 cases in the middle of a pay period, and therefore, owe prepetition obligations for wages that have been accrued but not yet paid. On average, the Debtors' aggregate gross monthly payroll for their Employees is approximately $900,000.

16.   In connection with the wages and salaries paid to Employees, the Debtors are required by federal, state, and local law to withhold certain amounts for federal, state, and local income taxes, garnishments, and withholdings in connection with various employee benefits and other employee programs, as well as taxes, pension benefits, and other withholdings required by the laws of Israel, the United Kingdom, and other jurisdictions the Debtors have Employees working in (collectively, the "Withholding Taxes and Obligations") and to remit the withheld amounts to the appropriate taxing and other governmental authorities. For example, the Debtors

---

[3]   The Debtors and their professionals are conducting ongoing investigations to identify and verify additional Employee Benefit Programs and obligations. To the extent the statements or descriptions set forth herein are inaccurate or incomplete, the Debtors will seek to either amend such statements or descriptions or provide further information to the Court and parties in interest during any hearings set to consider this Motion

[4]   Employees in Dubai, Bermuda, Hong Kong, Japan, and Korea have not been retained but their pay cycles are described here for completeness in order to explain the timing of their severance payments.

are generally required in accordance with court orders to garnish approximately 0.6% of certain Employees' wages (the "Garnishments") and remit the withheld amounts to the appropriate taxing authorities.  As part of administering payroll, the Withholding Taxes and Obligations and Garnishments are deducted directly from the Debtors' payroll account to remit to the appropriate taxing authorities.  The Debtors are still in the process of reconciling their records to determine how much remains due and owing on account of the Withholding Taxes and Obligations and Garnishments as of the Petition Date.  The Debtors will provide these amounts upon submission of a revised Interim Order to this Court ahead of a first day hearing.  Accordingly, the Debtors seek authority through this Motion to continue with this practice.

17.    The Debtors use various payroll service providers to administer and process payroll, including reviewing the amount of the Withholding Taxes and Obligations, Garnishments and amounts related to the Employee Benefit Programs (as defined below) for each payroll cycle and withdraw and remit such payments directly to the appropriate authorities and the balance to the Debtors' Employees.  Specifically, the Debtors use HR Vensure with respect to Employees in the U.S., Mazars with respect to Employees in the United Kingdom, Expertise Limited with respect to employees in Bermuda, Tricor with respect to Employees in Hong Kong, and Remofirst with respect to Employees in Korea, Japan, and Germany.  Employees in Israel are paid directly from the Debtors.  The Debtors' used both Remofirst and Vistra to pay Employees in Dubai.  On average, the Debtors historically paid the payroll service providers approximately $1,370.00 per month (the "Payroll Service Fee"). As of the Petition Date, the Debtors estimate that approximately $1,370 remains due and owing on account of the Payroll Service Fee. The Debtors seek authority, but not direction, to pay any prepetition amounts due and owing on account of the Payroll Service Fee and seek to continue such services in the ordinary course.

18.     The Debtors believe that they owe $500,000.00 to Employees in accrued and unpaid compensation (the "Unpaid Compensation") at this time for services rendered following the end of the most recent payroll cycles and seek authority to pay these amounts in the ordinary course.  To the extent that any additional prepetition amounts remain outstanding, the Debtors seek authority to pay them in the ordinary course.

19.     Given the critical role of the Employees in the Debtors' business operations, the Debtors seek authority, but not direction, to honor their payroll obligations by paying, in the ordinary course, any Unpaid Compensation owed to the Employees.  Importantly, the Debtors believe that no Employee is owed more than the $15,150 priority limit on account of prepetition salaries or wages under section 507(a)(4) of the Bankruptcy Code (the "Priority Limit").

**B.      Business Expenses**

20.     Prior to the Petition Date, and in the ordinary course of business, the Debtors reimbursed Employees for certain business expenses incurred in the scope of their employment, including travel, lodging, ground transportation, meals, and other miscellaneous business expenses (collectively, the "Business Expenses").

**1.      Out of Pocket Expenses**

21.     Certain Employees for the benefit of the Debtors pay for Business Expenses (collectively, the "Out of Pocket Expenses") with the understanding that they will be reimbursed upon the submission of a receipt or claim itemizing expenses in accordance with the Debtors' reimbursement policy.  The Debtors estimate, on average, that approximately $10,000 per month is reimbursed to Employees through payroll on account of Out of Pocket Expenses.  As of the Petition Date, the Debtors estimate that approximately $10,000 remains due and owing on account

of Out of Pocket Expenses, the entirety of which is due and payable in the first 21 days of these chapter 11 cases.

22.     Although Employees must submit their reimbursement request promptly, sometimes submissions are delayed, which may result in Employees submitting requests for prepetition Business Expenses after the Petition Date.  Employees incur Business Expenses on the Debtors' behalf and with the understanding that such expenses will be reimbursed fully.  The Debtors seek authority, in their discretion, to continue their Business Expenses' policy in the ordinary course during these chapter 11 cases.

### 2.     Corporate Credit Cards

23.     The Debtors also provide certain Employees with corporate credit cards (the "Corporate Credit Cards") for use in payment of Business Expenses.  Corporate Credit Cards are generally only issued to higher-level employees.  As of the Petition Date, approximately four of the Employees have Corporate Credit Cards issued to them for use in payment of Business Expenses.

24.     The Corporate Credit Cards are issued to Employees in each Employee's own name with monthly invoices sent to the Debtors' attention.  Payments are made on behalf of the Corporate Credit Cards each month and are paid by the Debtors directly.

25.     The Debtors estimate, on average, that approximately $30,000 per month is incurred on account of the Corporate Credit Cards.  The Debtors are still in the process of reconciling their records to determine how much remains due and owing on account of the Corporate Credit Cards as of the Petition Date.  The Debtors will provide this amount upon submission of a revised Interim Order to this Court ahead of a first day hearing.  Accordingly, the

Debtors seek authority, in their discretion, to pay any prepetition amounts due and owing related to the Corporate Credit Cards and seek to continue such services in the ordinary course.

## IV.    Employee Benefit Programs

26.    In the ordinary course of business, the Debtors, maintain various employee benefit plans and policies, including, but not limited to, medical plans, dental plans, vision plans, life insurance plans, short-term and long-term disability plans and other benefit programs (collectively, the "Employee Benefit Programs").[5]  The Employee Benefit Programs are, in each case, available to all Employees (the "Eligible Employees" and, with respect to each plan or program in which they participate, the "Plan Participants").

27.    By this Motion, the Debtors seek authority, in their discretion, to pay prepetition claims (if applicable), to honor obligations, and to continue programs in the ordinary course of business and consistent with prior practice relating to the Employee Benefit Programs,[6] subject to the Debtors' ability to modify or discontinue any Employee Benefit Programs in their discretion and to reduce applicable costs, the scope of benefits provided, or reporting periods permitted thereunder.  The Debtors are still in the process of reconciling their records to determine how much remains due and owing on account of the Employee Benefit programs as of the Petition Date.  The Debtors will provide these amounts upon submission of a revised Interim Order to this Court ahead of a first day hearing.

---

[5]    The descriptions of the Debtors' compensation and benefits programs contained in this Motion are provided for convenience only and are qualified in all respects by the actual terms of such programs.  Nothing contained in this Motion shall have the effect of modifying the terms of the compensation and benefits programs or altering any party's rights and obligations thereunder.

[6]    Relief requested in this Motion shall not constitute or be deemed an assumption or an authorization to assume any of such Employee Benefit Programs under section 365(a) of the Bankruptcy Code.

A. **Group Health Plan**

28.    The Debtors provide Eligible Employees, and their eligible dependents, with the opportunity to participate in a packaged group health plan (the "Group Health Plan"). The Group Health Plan is provided by a variety of insurers depending on the jurisdiction the Employees work in, including Ginger Insurance which provides a Group Health Plan to Israeli employees, and Guardian which provides a variety of policies to Employees in the U.S., including: a Life Insurance Plan, a Dental and Vision Plan, a Health Savings Account Plan, a Flexible Savings Account Plan, and a Personal Accident Insurance and Disability Plan (each as defined herein and, collectively, the "Health Insurance Plans"). Plan Participants' contributions to the Health Insurance Plans are deducted from payroll. The Debtors also contribute under certain of the Health Insurance Plans. As of the Petition Date, the Debtors estimate that the aggregate amount due and owing under the Health Insurance Plans to U.S. Employees is approximately $33,125.00. The Debtors are still in the process of reconciling their records to determine how much remains due and owing on account of the Health Insurance Plans as of the Petition Date to employees in the foreign jurisdictions where the Debtors operate. The Debtors will provide these amounts upon submission of a revised Interim Order to this Court ahead of a first day hearing.

29.    The Debtors seek authority, but not direction, to: (a) continue the Health Insurance Plans in the ordinary course; (b) make any payments on account of any accrued but unpaid prepetition amounts due and owing under the Health Insurance Plans, which shall not be subject to the Priority Limit; and (c) remit any payments withheld from Plan Participants through payroll deductions under the Health Insurance Plans.

**B.      Other Benefit Programs**

**1.      Paid Time Off**

30.      The Debtors maintain several time off and paid leave benefit programs for Employees, providing paid leave for the Vacation Policy, Sick Leave Policy and Holiday Policy (each as defined below, and together, the "Time Off Policies").

31.      In the ordinary course, all Employees are eligible for vacation time (the "Vacation Policy"), which can be used for personal time off ("PTO") due to personal appointments, family matters, school activities, religious observances, rest and relaxation, and other personal obligations.  The Debtors also offer eighteen days of paid time off for sick days (the "Sick Leave Policy").  Under the Vacation Policy, Employees accrue vacation benefits from the date of hire and the accrual and use of PTO varies depending on, among other things, the Employee's length of service.  The Debtors are still in the process of reconciling their records to determine how many hours of accrued and unused PTO under the Vacation Policy the Debtors' Employees have earned and their value as of the Petition Date.  The Debtors will provide these amounts upon submission of a revised Interim Order to this Court ahead of a first day hearing.  Nevertheless, the Debtors seek authorization to continue the Vacation Policy in the ordinary course of business, including the ability to cash out unused PTO in accordance with the Vacation Policy in place prior to and on the Petition Date, subject to the Priority Limit.

32.      The Debtors also offer eighteen days of paid time off for sick days and eight days of paid time off to parents who need to take time to take care of a sick child under the age of 16 (the "Sick Leave Policy").  Employees may accumulate up to ninety personal sick days and eighteen child sick days and carry them over year-to-year, however such days cannot be cashed out.

33.     The Debtors also offer Employees nine paid holidays throughout the year (the "Holiday Policy"), for which Employees receive their regular rate of pay.

34.     The Debtors seek authority, in their discretion, to continue the Time Off Policies for their Employees in the ordinary course of business.

### 2.    401(k) Plan

35.     The Debtors offer Employees an opportunity to participate in and contribute to a 401(k) plan (the "401(k) Plan"), which is administered by Alliant Retirement Services. Participating Employees can make pre-tax contributions to the 401(k) Plan, up to the Internal Revenue Services' maximum amount allowed.  There are approximately eleven Employees with current account balances in the 401(k) Plan (the "401(k) Program Participants"), not including former employees who have not yet moved or rolled over funds.  The Debtors payroll service providers withhold approximately $45,000 each month from active employed 401(k) Program Participants' paychecks on account of contributions to the 401(k) Plan (the "401(k) Savings Plan Withholdings").  In addition, the Debtors match up to 3% of an Employee's contribution to the 401(k) Plan.  The Debtors are still in the process of reconciling their records to determine how the Debtors ordinarily contribute per month on account of their matching obligations under the 401(k) Plan, as well as the amount that is owed to Employees under the 401(k) Plan as of the Petition Date.  The Debtors will provide these amounts upon submission of a revised Interim Order to this Court ahead of a first day hearing.  Accordingly, by this Motion, the Debtors seek authority, but not direction, to continue to maintain the 401(k) Plan and honor their obligations in the ordinary course.

### 3.    Severance

36.    In the ordinary course of business, the Debtors do not maintain a severance program.  However, because the Debtors have terminated several Employees prior to the Petition Date, severance payments will be owed to various Employees pursuant to requirements under applicable employment law in Israel, the United Kingdom, and other countries where the Debtors operated.  The Debtors, therefore, are obligated to make these severance payments under applicable law.

37.    As of the Petition Date, the Debtors owe approximately $1,399,503.00[7] in pre-petition severance payments and $89,106.00 in post-petition severance payments. By this Motion, the Debtors seek to make such payments in the ordinary course, as well as to continue paying terminated employees the amount of salary payments owed to such Employees until their applicable termination date.

## BASIS FOR RELIEF REQUESTED

**V.    The Proposed Payments and Continuation of the Employee Benefit Programs are Appropriate under Sections 105(a), 363(b), 1107(a), and 1108 of the Bankruptcy Code and the Doctrine of Necessity.**

**A.    Payment of the Prepetition Employee Obligations Is Authorized Under Sections 363(b) and 105(a) of the Bankruptcy Code.**

38.    Section 363(b)(1) of the Bankruptcy Code authorizes the Court, after notice and a hearing, to permit a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  To approve the use of assets outside the ordinary course of business under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions."  *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re*

---

[7]    Certain of these payments are in excess of the Priority Limit, however, the Debtors believe they are obligated by law to make these payments and accordingly ask that these payments be allowed in the ordinary course.

*Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted).

39.     To supplement these explicit powers, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under section 105 of the Bankruptcy Code, the bankruptcy court may permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor and to enable a successful reorganization.  *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (noting that "necessity of payment" doctrine provides that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [debtor] during reorganization, payment may be authorized even if it is made out of corpus."); *In re Just for Feet, Inc*., 242 B.R. 821, 826 (D. Del. 1999) (bankruptcy courts may exercise equitable powers to authorize payment of prepetition debt where such payment is necessary to preserve the going concern value of a debtor's business); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (section 105 empowers bankruptcy courts to authorize payment of prepetition debt "when such payment is needed to facilitate the rehabilitation of the debtor").

40.     The payment of the Prepetition Employee Obligations serves the sound business purpose of maximizing the value of the Debtors' estates.  The Debtors' success in these chapter 11 cases hinges in large part on the morale and continued efforts of the Employees.  Through the payment of the Prepetition Employee Obligations, the Debtors seek to motivate and encourage the

15

Employees to continue to support the Debtors' reorganization.  Accordingly, this Court should grant the requested relief under section 363 of the Bankruptcy Code.

41.    Further, in the sound exercise of the Debtors' business judgment, the maintenance and continuation of the Employee Benefit Programs provides necessary incentive and comfort for the Employees going forward.  Absent such benefits, it is likely that there would be significant disruption to the Debtors' operations.

**B.    Payment of Any Outstanding Prepetition Employee Obligations Is a Proper Exercise of the Debtors' Fiduciary Duties under Sections 1107(a) and 1108 of the Bankruptcy Code.**

42.    Payment of the Prepetition Employee Obligations is also authorized under sections 1107 and 1108 of the Bankruptcy Code.  As debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are fiduciaries operating their business for the benefit of their creditors and other stakeholders. *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 474 (3d Cir. 1998); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Allied Sys. Holdings, Inc.*, 524 B.R. 598, 603 (Bankr. D. Del. 2015) (finding that directors of an insolvent corporation owed fiduciary duties both to the company and to its creditors).  Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *CoServ*, 273 B.R. at 497.  Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a pre-petition claim." *Id*.

43.    The *CoServ* court specifically noted that the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id*.  There, the court applied a three-

16

pronged test to determine whether a pre-plan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

44.     Payment of the Prepetition Employee Obligations meets each element of the *CoServ* test. The Employees likely have priority claims against the Debtors for the Prepetition Employee Obligations. In addition, any failure by the Debtors to pay the Prepetition Employee Obligations could lead to retention issues that would jeopardize the Debtors' business and doom their efforts in these chapter 11 cases. In short, the potential harm and economic disadvantage that would result from the failure to pay the Prepetition Employee Obligations is grossly disproportionate to the amount of any prepetition claims that the Debtors are seeking to pay as part of this Motion. Moreover, the Debtors have determined that there is no practical or legal alternative to payment of the Prepetition Employee Obligations. Therefore, payment of the Prepetition Employee Obligations is consistent with the Debtors' fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code, and the Debtors respectfully request that the Court grant the Motion.

45.     Further, the payment of prepetition claims of employee wages, expenses, and benefits is customarily approved by Courts in this District. *See, e.g. In re AeroFarms, Inc., et al.*, Case No. 23-10737 (MFW) [D.I. 99] (Bankr. D. Del. June 29, 2023); *In re Fast Radius, Inc., et al.*, Case No. 22-11051 (JKS) [D.I. 209] (Bankr. D. Del. Dec. 13, 2022); *In re EYP Group*

*Holdings, Inc., et al.,* Case No. 22-10367 (MFW) [D.I. 128] (Bankr. D. Del. May 23, 2022); *In re Sequential Brands Group, Inc., et al.,* Case No. 21-11194 (JTD) [D.I. 109] (Bankr. D. Del. Sept. 21, 2021); *In re Alex and Ani, LLC, et al.,* Case No. 21-10918 (CTG) [D.I. 185] (Bankr. D. Del. July 14, 2021).[8]  Accordingly, for all of the foregoing reasons, the Debtors respectfully submit that there is ample cause for granting the requested relief.

**VI.    Payment of Certain Prepetition Employee Obligations Is Appropriate under Section 541 of the Bankruptcy Code Because Certain Taxes Are Not Property of the Estates.**

46.    The Debtors also seek authority to pay certain deductions, withholdings, and payroll taxes to the appropriate entities.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' paychecks.  Indeed, certain deductions, including contributions to various benefits programs, child support, and alimony payments, are not property of the Debtors' estates because they have been withheld from Employees' paychecks on another party's behalf.  *See* 11 U.S.C. § 541(b); *Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes, and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); *City of Farrell v. Sharon Steel Corp.* (*In re Sharon Steel Corp.*), 41 F.3d 92, 98–103 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds were commingled with the debtor's other property); *Old Republic Nat'l Title Ins. Co. v. Tyler* (*In re Dameron*), 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust

---

[8]    In accordance with Local Rule 7007-2(a)(vii), the Debtors' proposed counsel has copies of each order and will make them available to this Court or to any party that requests them.  The orders are also available on this Court's CM/ECF PACER site at the cited docket numbers and on the dates specified above.

are excluded from the bankruptcy estate). Accordingly, such funds are not available for general distribution to a debtor's creditors.

47. Further, federal and state laws, as well as the laws of Israel, the United Kingdom, and other foreign jurisdictions where the Debtors operate, require the Debtors and their officers to make certain tax payments that have been withheld from their Employees' paychecks, or the officers may risk personal liability. *See* 26 U.S.C. §§ 6672 and 7501(a); *see also In re Sharon Steel Corp.*, 41 F.3d at 95–97 (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co., Inc. v. State of Mich.* (*In re DuCharmes & Co.*), 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).

48. Because the deductions and payroll taxes are not property of the Debtors' estates, the Debtors request the Court's authorization to transmit the deductions and payroll taxes to the proper parties.

## VII. The Proposed Payments May Be Entitled to Priority under Section 507 of the Bankruptcy Code.

49. Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code require that certain claims for prepetition wages, salaries, commissions, vacation, sick leave, and employee benefit contributions be accorded priority in payment in an amount not to exceed $15,150 for each employee (to the extent such amounts accrued within 180 days of the Petition Date).

50. None of the Employees are owed amounts for accrued and unpaid prepetition wages or salaries, including outstanding and uncashed payroll checks, in excess of the statutory caps of Bankruptcy Code sections 507(a)(4) and 507(a)(5). Granting the relief requested is consistent with the Bankruptcy Code's purpose in ensuring employees are paid in full on account of the priority

19

status of their claims, up to the statutorily imposed limit.  Accordingly, the Debtors respectfully

submit that no prejudice to creditors or other parties in interest would result from granting the

relief requested.

**VIII.  A Limited Waiver of the Automatic Stay for Workers' Compensation Claims Is Appropriate.**

51.    Section 362(a)(1) of the Bankruptcy Code operates to stay:

> the commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other action
> or proceeding against the debtor that was or could have been
> commenced before the commencement of the case under this title,
> or to recover a claim against the debtor that arose before the
> commencement of the case under this title....

Section 362 of the Bankruptcy Code, however, also permits a debtor or other parties in interest to

request a modification or termination of the automatic stay for "cause."  *See* 11 U.S.C. § 362(d)(1).

52.    The Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to

permit their Employees to proceed with their claims under the Workers' Compensation Program

in the appropriate judicial or administrative forum.  The Debtors believe that cause exists to modify

the automatic stay because staying the Employees' workers' compensation claims could have a

detrimental effect on the financial well-being and morale of the Employees and lead to the

departure of certain Employees who are critical to the Debtors.  Such departures could cause a

severe disruption in the Debtors' business to the detriment of all stakeholders.  In addition, if the

Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors

from operating in those states.  Accordingly, the Debtors request a limited waiver of the automatic

stay for purposes of allowing the Workers' Compensation Program to proceed.

## **BANKRUPTCY RULE 6003(B) HAS BEEN SATISFIED**

53.     Bankruptcy Rule 6003(b) provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . a motion to . . . pay all or part of a claim that arose before the filing of the petition."  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would significantly disrupt a debtor's business and operations, thereby challenging a debtor's ability to resolve a bankruptcy case in an orderly manner.  *See, e.g.*, *In re Bayou Steel BD Holdings, L.L.C.*, Case No. 19-12153 (KBO) [D.I. 46] (Bankr. D. Del. Oct. 3, 2019) (providing that the debtors satisfied the requirements of Bankruptcy Rule 6003(b), as the relief requested was necessary to avoid immediate and irreparable harm); *see also In re Geneco Shipping & Trading Ltd.*, 509 B.R. 455, 469 (Bankr. S.D.N.Y. 2014).

54.     Specifically, without authority to pay Prepetition Employee Obligations, the Debtors face the bleak reality that the Employees and Independent Contractors could abandon the Debtors and property of their estates on a large scale.  Based on the foregoing, the Debtors respectfully submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm and, therefore, that they satisfy the requirements under Bankruptcy Rule 6003 for the payment of pre-petition claims.  For the reasons discussed herein, the relief requested is necessary to continue the Debtors operations and to preserve the maximum value of their estates.  Accordingly, the Debtors respectfully submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

55.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## RESERVATION OF RIGHTS

56.     Nothing contained in this motion is intended to or shall: (a) be construed as an admission as to the validity of any claim against the Debtors; (b) impair, prejudice waive or otherwise affect the rights of the Debtors or their estates to dispute the amount of, basis for, nature, validity or priority of any claim against the Debtors; (c) impair, prejudice waive or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action which may exist against any third party; (d) be construed as an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between any Debtor and any third party under section 365 of the Bankruptcy Code; and (e) create any rights in favor of, or enhance the status or nature of any claim held by, any person.

## NOTICE

57.     Notice of this motion will be provided to: (a) the Office of the United States Trustee for Region 3 (Attn: Timothy Fox, Esq. (Timothy.Fox@usdoj.gov)); (b) the Office of the United States Attorney for the District of Delaware; (c) each of the parties included on the Debtors' consolidated list of thirty largest unsecured creditors; (d) the Internal Revenue Service; (e) the

attorney general for each state in which the Debtors operate; (f) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (g) any other party that is entitled to notice under Local Rule 9013-1.  As this motion is seeking "first day" relief, notice of this motion and any order entered in connection herewith will be served on all parties required by Local Rule 9013-1(m). Such notice is sufficient and no further notice of this motion is required.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an interim order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and scheduling a final hearing on the Motion, and (ii) thereafter enter a final order substantially in the form attached hereto as **Exhibit B**, and (iii) grant such other and further relief as the Court may deem proper.

Dated:  August 18, 2023

**DLA PIPER LLP (US)**

*/s/ R. Craig Martin*
R. Craig Martin (DE 5032)
Stuart M. Brown (DE 4050)
Matthew Sarna (DE 6578)
1201 N. Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: craig.martin@us.dlapiper.com
        stuart.brown@us.dlapiper.com
        matthew.sarna@us.dlapiper.com

*Proposed Counsel for the Debtors*