**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| VESTTOO LTD., *et al.*[1] | Case No. 23-11160 (MFW) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I)**
**AUTHORIZING THE CONTINUED USE OF THE DEBTORS' CASH MANAGEMENT**
**SYSTEM, (II) MODIFYING REQUIREMENTS OF SECTION 345 OF THE**
**BANKRUPTCY CODE, AND (III) GRANTING RELATED RELIEF**

Vesttoo Ltd. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), by and through their proposed counsel, DLA Piper LLP (US), hereby submit this motion (this "Motion") for entry of an interim order and a final order, substantially in the forms of order attached to this Motion as **Exhibit A** (the "Proposed Interim Order") and **Exhibit B** (the "Proposed Final Order"), respectively: (i) authorizing, but not directing, the Debtors to (a) maintain and use their existing cash management system, bank accounts, checks and business forms (including authorizing the Debtors to open and close bank accounts as necessary in the ordinary course of business), (b) pay related prepetition obligations, including, without limitation, any unpaid Bank Fees (defined below), (ii) modifying the requirements of section 345(b) of the Bankruptcy Code, and (iii) granting related relief. In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Ami Barlev in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") to be filed in these chapter 11 cases, and respectfully state as follows:

---

[1]     Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/vesttoo.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these chapter 11 cases, the Debtors, property of the Debtors' estates, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

2.      Under Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue of these cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested in this motion are sections 105, 345, and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2015-2.

## BACKGROUND

5.      On August 14 and 15, 2023 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their property, continue to operate their businesses and manage their property as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee of unsecured creditors has been appointed.  No date has been set for a meeting of creditors under section 341 of the Bankruptcy Code.

ACTIVE\1602362750.1

6.      Additional factual background regarding the Debtors, including their business operations, capital and debt structures, and the events leading to these chapter 11 cases, is set forth in the First Day Declaration, which is incorporated into this Motion by this reference.

**A.      The Debtors' Cash Management System**

7.      Prior to the Petition Date, in the ordinary course of business, the Debtors employed an integrated and financially consolidated cash management system to collect, transfer, and disburse funds generated by the Debtors' operations (the "Cash Management System").  The Cash Management System enables the Debtors to collect and disburse cash generated by their business, pay their financial obligations, centrally control and monitor corporate funds and available cash, comply with the requirements of their various transactions obtain accurate account balances and other financial data, forecast financial performance and ensure cash availability and liquidity.  The Cash Management System is tailored to meet the Debtors' operating needs while reducing administrative expenses.

8.      The Cash Management System has served as the primary funds flow mechanism for the Debtors' ordinary and essential business operations and any disruption to the Cash Management System would be detrimental to the Debtors' operations, as their business requires prompt access to cash.  To avoid any further disruption caused by these chapter 11 cases and to maximize the value of the Debtors' estates, it is essential that the Debtors be allowed to maintain their longstanding Cash Management System.  An illustrative schematic depicting the flow of funds within the Cash Management System is attached to this Motion as **Exhibit C**.

**B.      The Debtors' Bank Accounts**

9.      The Debtors currently maintain 46 bank accounts (each, a "Bank Account" and, collectively, the "Bank Accounts") with the following banks and other financial institutions (each,

3

a "Bank" and collectively, the "Banks"): (i) Bank Hapoalim; (ii) Truist Financial; (iii) HSBC; (iv) DBS Bank (Hong Kong) Limited; (v) Webster Bank; (vi) Hana Bank, Naejadong Branch; (vii) HSBC Bank Bermuda; and (viii) Israel Discount Bank.

10.     A list of the Bank Accounts (detailing each Bank Account's legal account holder name, the Bank at which it is held, the last four digits of the Bank Account number and the Bank Account type is attached to this Motion as **Exhibit D**.[2]  The Bank Accounts are utilized as follows:[3]

a.  **Concentration Account** (*7726):  Debtor Vesttoo Ltd. maintains one bank account at Bank Hapoalim in Israel, which serves as the Debtors' primary concentration account (the "Concentration Account") to facilitate international and domestic transactions both with Debtor affiliates and third parties.  All revenue derived from subsidiary Debtor operations is swept up into the Concentration Account for reconciliation and subsequent downstream disbursement to the operating Debtors as Intercompany Transfers.

b.  **Operating Accounts** (*2400, *3269, *5964, *3052, *7730, *9071, *5298, *9501): Debtors Vesttoo US Inc., Vesttoo UK LTD, Vesttoo Hong Kong Limited, Vesttoo Securities (USA) LLC, Vesttoo Korea Inc., and Vesttoo Marketplace Ltd. maintain operating accounts with Bank Hapoalim B.M. New York, HSBC, DBS Bank (Hong Kong) Limited, Webster Bank, and Hana Bank, Naejadong Branch, each to facilitate the receipt of funds from the Concentration Account to pay each entity's respective expenses, including, without limitation, funding payroll, marketing, and overhead expenses.

c.  **Bay Accounts**: Each of the twenty-one (21) Debtor Vesttoo Bay entities holds preferred shares of certain segregated cells (collectively, the "Segregated Cells"). For each transaction, these Segregated Cells are established by a transformer (or reinsurer).  The transformer then sells the preferred shares in the Segregated Cells to the respective Vesttoo Bay entity.  Each Segregated Cell's funds are held in a separate account (collectively, the "Bay Accounts").  Under Bermudian law, as the holder of the preferred shares in the Segregated Cells, and therefore the owner thereof, the respective Vesttoo Bay entity also owns the Bay Accounts and the funds therein.  Post-transaction, Vesttoo Holdings Ltd. sweeps the funds from the

---

[2]     The Debtors and their professionals are conducting ongoing investigations to identify and verify additional bank accounts and cash positions.  To the extent the statements or descriptions set forth herein are inaccurate or incomplete, the Debtors will seek to either amend such statements or descriptions or provide further information to the Court and parties in interest during any hearings set to consider this Motion.

[3]     This Motion provides an illustrative overview of the Debtors' Bank Accounts.  The requested relief is not limited to those Bank Accounts specifically described in this Motion.  To the extent that there are any bank accounts not described in this Motion, the Debtors, out of an abundance of caution, seek authority to continue use of all existing bank accounts in the ordinary course of business, subject to the terms of this Motion.

Bay Accounts, and after taking out a percentage fee, transfers the remainder to the applicable investor.  Vesttoo Holdings Ltd. then transfers its retained fee up to the Concentration Account.

11.  In connection with the Bank Accounts, the Banks charge, and the Debtors pay or honor, customary fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or postpetition, as such fees are specified in the existing deposit and cash management agreements between the Debtors and any Bank (including all other related agreements) (such fees, the "Bank Fees"); such Bank Fees are de minimis.

**C.    Compliance with Operating Guidelines and Section 345 of the Bankruptcy Code**

12.  To the best of the Debtors' knowledge, each Bank Account is either maintained at a Bank that is insured by the Federal Deposit Insurance Corporation (the "FDIC") or insured by a similar scheme depository protection in its country of operation.  Pursuant to the Operating Guidelines for Chapter 11 Cases as promulgated by the Office of the U.S. Trustee for Region 3 (the "Operating Guidelines"), the Debtors are required to deposit all estate funds with a financial institution that is an authorized depository approved by the U.S. Trustee and that agrees to comply with the requirements of the U.S. Trustee.  Certain of the Bank Accounts are maintained with Banks identified on the list of authorized bank depositories (i.e., Truist Bank, HSBC, Webster Bank, and Israel Discount Bank).  However, the remainder of the Debtors' Bank Accounts are maintained with Banks not on the authorized depository list.

13.  Notwithstanding the failure to strictly comply with the Operating Guidelines, as set forth more fully below, the Debtors submit that there is substantial cause to waive the requirements of section 345 of the Bankruptcy Code and the applicable Operating Guidelines' requirements under the circumstances of these chapter 11 cases.

5

**D.      Business Forms**

14.     As part of the Cash Management System, the Debtors utilize preprinted business forms (the "Business Forms") in the ordinary course of their business.  The Debtors also maintain books and records to document their revenue and expenses, among other things.  To minimize expenses to their estates and avoid confusion on the part of employees, vendors, and suppliers during the pendency of these chapter 11 cases, the Debtors request that the Court authorize their continued use of all correspondence and Business Forms (including, without limitation, letterheads, invoices, and preprinted checks) as such forms were in existence immediately before the Petition Date, without reference to the Debtors' status as debtors in possession, rather than requiring the Debtors to incur the expense and delay of ordering entirely new Business Forms as required under the Operating Guidelines.

15.     To the extent the Debtors' existing check stock is depleted, the Debtors will affix the designation "Debtor in Possession" and the case number of these chapter 11 cases when rendering checks.  Likewise, with respect to checks which the Debtors or their agents print themselves, the Debtors will begin printing the "Debtor in Possession" legend and the case number of these chapter 11 cases on such items within ten (10) business days after the date of entry of the Interim Order.

**E.      Credit Cards**

16.     The Debtors also maintain two (2) credit cards used to pay expenses that arise in the ordinary course, including, without limitation, office supplies, equipment, gasoline charges, among others.  Further, and in the ordinary course of business, Vesttoo Ltd. transfers funds from the Concentration Account on behalf of certain of the Debtors on account of invoices due and payable for various operating expenses and obligations arising from customer contracts.  As of the

6

Petition Date, the Debtors believe that no amounts are due and owing under their credit cards. However, in an abundance of caution, through the Debtors' wage motion, filed contemporaneously herewith, the Debtors are seeking authority to make credit card payments arising prepetition, subject to the caps laid out therein.

**F.    The Debtors' Intercompany Arrangements**

17.    The Cash Management System also enables the Debtors to transfer funds among the Debtor entities in the ordinary course of business (the "Intercompany Transfers").  In the ordinary course of business, the Debtors make Intercompany Transfers.  Specifically, Debtor Vesttoo Ltd. transfers funds downstream to the operating Debtors to fund, among other things, payroll, marketing, and overhead expenses (the "Intercompany Claims").  Such downstream Debtors operate at cost-plus basis and provide equivalent value in the form of marketing and other services upstream to Debtor Vesttoo Ltd.  Accordingly, at any given time, there may be Intercompany Claims owing by one Debtor to another Debtor.  This Intercompany Transfer mechanism is critical to reduce administrative costs and ensure the orderly and efficient operation of the Debtors' enterprise, and, therefore, the Debtors request the continuance of these transfers in the ordinary course.

**RELIEF REQUESTED**

18.    Pursuant to sections 105, 345, and 363 of the Bankruptcy Code, the Debtors request entry of orders, substantially in the forms of the Proposed Interim Order and the Proposed Final Order (i) authorizing, but not directing, the Debtors to continue (a) maintenance and use of their existing cash management system, bank accounts, checks and business forms (including authorizing the Debtors to open and close bank accounts as necessary in the ordinary course of business), (b) payment of related prepetition obligations, including, without limitation, any unpaid

7

Bank Fees (defined below); (ii) modifying the requirements of section 345(b) of the Bankruptcy Code; and (iii) granting related relief.

19.    The Debtors also request that the Court (a) authorize all Banks, when requested by the Debtors, to receive, process, honor and pay any and all checks, drafts, credit card payments, processing fees, and other forms of payment, including fund transfers (collectively, the "Payments"), whether such Payments submitted before, on or after the Petition Date (defined below), provided that (i), with respect to Payments on account of prepetition claims, the Court has approved such Payments, and (ii) sufficient funds are on deposit in the applicable Bank Accounts to cover such Payments; (b) authorize the Banks to rely on any directions and representations of the Debtors as to which Payments are subject to and permitted to be paid pursuant to the Interim and Final Orders; (c) authorize, but not direct, the Debtors to make postpetition Payments to replace any checks, drafts and other forms of payment, including fund transfers, that may be inadvertently dishonored or rejected but were otherwise approved by the Court to be paid; and (d) authorize, but not direct, the Debtors to continue in their ordinary course to pay certain fees in connection with their Cash Management System.

20.    The Debtors also request that this Court waive strict application of the requirements of section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines to the extent the Cash Management System does not comply with such requirements.

## BASIS FOR RELIEF

**A.    The Court should authorize the Debtors' continued use of their existing Cash Management System, Bank Accounts, and Bank Forms.**

21.    Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing."  The purpose of this section is to provide a debtor with the flexibility to engage in the ordinary transactions required to

operate its business without excessive oversight by its creditors or the court. *See, e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). Bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter," and have recognized that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *In re Columbia Gas Sys. Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993); *Collins & Aikman Corp. v. Valeo* (*In re Collins & Aikman Corp.*), 401 B.R. 900, 902 (Bankr. E.D. Mich. 2009) (noting that the court authorized the debtors' continued use of a cash management system which the debtors characterized as critical to their operations and necessary to efficiently and effectively operate their large and complex business operations).

22.    As a result, courts have concluded that the requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *In re Columbia Gas*, 997 F.2d at 1061; *see also In re Jevic Holding Corp.*, 432 B.R. 162, 166–67 (Bankr. D. Del. 2010) (Noting that requiring the debtor to maintain a separate account for each railroad carrier rather than a cash management system would be "economically inefficient"); *Southmark Corp. v. Grosz* (*In re Southmark Corp.*), 49 F.3d 1111, 1114 (5th Cir. 1995) (observing that a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets"); *Baker Farms, Inc. v. Sandridge E&P, LLC* (*In re Sandridge Energy, Inc.*), No. 16-32488, 2018 WL 889357, at *3 (Bankr. S.D. Tex. Feb. 5, 2018) (stating that maintaining a centralized cash management system allows the debtors to manage the cash of operating units in a cost-effective, efficient manner).

9

23.     Additionally, the Court may rely on its equitable powers to grant the relief requested herein.  Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a) of the Bankruptcy Code and the doctrine of necessity, the Court may exercise its broad grant of equitable powers to approve the payment of prepetition obligations when such payment is essential to the continued operation of a debtor's business.  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105 of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings") (citation omitted); *In re Nixon*, 404 F. App'x 575, 578 (3d Cir. 2010) ("It is well settled that the court's power under § 105(a) is broad") (citation omitted); *In re Nortel Networks, Inc.*, 532 B.R. 494, 554 (Bankr. D. Del. 2015) ("The Third Circuit has construed [section 105 of the Bankruptcy Code] to give bankruptcy courts 'broad authority' to provide appropriate equitable relief to assure the orderly conduct of reorganization proceedings, and to 'craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain.'") (citations omitted).  Therefore, it is within the Court's equitable power under section 105(a) of the Bankruptcy Code to approve the Debtors' continued use of the Cash Management System.

### i.     Cash Management System

24.     The Cash Management System currently in place constitutes an ordinary course and essential business practice, enabling the Debtors to: (a) control and monitor corporate funds, (b) ensure maximum availability of funds when and where necessary, (c) reduce borrowing costs and administrative expenses by facilitating the handling and movement of funds, and (d) streamline financial reporting and development of more timely and accurate account balance

information.  The use of the Cash Management System historically has reduced the Debtors' expenses by enabling the Debtors to use funds in an optimal and efficient manner.  In light of the manner in which the Debtors generate and track transactions related to their operations, any disruption in the Debtors' cash management procedures may disrupt payments to employees and key vendors, among others, and will hamper the Debtors' efforts to preserve and enhance the value of their estates.  Therefore, it is essential that the Debtors be permitted to continue to use their Cash Management System in accordance with their existing cash management procedures, including, for the avoidance of doubt, authority to implement ordinary course changes to their Cash Management System should the Debtors determine that changes in the Cash Management System are beneficial to their businesses and estates.

25.    As of the Petition Date, the Debtors have implemented mechanisms, instructions, and procedures to ensure unauthorized prepetition payments would not be made.  As noted, the Debtors will maintain records of all transfers within the Cash Management System to the same extent they were recorded by the Debtors before commencement of these chapter 11 cases.  To protect against the unauthorized payment of prepetition obligations, the Debtors represent that, if they are authorized to continue using the Bank Accounts, they will not pay, and the Banks will not be directed to pay, any debts incurred before the Petition Date (other than as authorized by this Court), and the Debtors will provide notice of entry of such orders to the Banks.

**ii.    Bank Accounts**

26.    As set forth above, the Debtors currently maintain 46 Bank Accounts in the ordinary course of business.  As part of their request to maintain their Cash Management System, the Debtors request that they be permitted to continue to use their Bank Accounts with the same account numbers.  Absent this relief, the Operating Guidelines would require the Debtors to close

11

all of their prepetition Bank Accounts and open new accounts, which will irreparably disrupt the Debtors' operations.  Allowing the Debtors to continue to use their prepetition Bank Accounts will assist the Debtors in accomplishing a smooth transition to operating in chapter 11.

27.     To protect against the possible inadvertent payment of prepetition claims, the Debtors have and will continue to advise their Banks not to honor checks issued by the Debtors prior to the Petition Date, except as otherwise expressly permitted by an order of the Court.  The Debtors will communicate to the Banks what checks have been expressly permitted by an order of the Court.  Moreover, the Debtors have the capacity to draw the necessary distinctions between prepetition and postpetition obligations and payments without closing their prepetition Bank Accounts and opening new ones.

### iii.    Business Forms

28.     The Business Forms are essential tools that assist the Debtors in transacting business domestically and with foreign vendors and third-parties, who have come to associate these forms with the Debtors' business.  Any disruption to the use of their existing Business Forms during this critical transition period could cause confusion or concern with the Debtors' vendors and contract counterparties, especially foreign parties. Thus, requiring the Debtors to discard their existing, pre-printed Business Forms would be counterproductive and, in any event, is not required under Local Rule 2015-2(a).  Any benefit to creditors of seeing the "Debtor in Possession" designation on the Debtors' Business Forms is outweighed by the likely confusion and unnecessary cost of requiring the Debtors to purchase new Business Forms to add specific designations.  To the extent the Debtors reorder or print any new checks themselves, they will include the designation "Debtor in Possession" and the lead case number.

### iv. Intercompany Transfers

29.    Prior to the Petition Date, the Debtors routinely engaged in Intercompany Transfers in the ordinary course. Continuing the Intercompany Transfers is appropriate, as such transfers made in the ordinary course and authorized pursuant to section 363(c) of the Bankruptcy Code. Additionally, the Intercompany Company Claims should be granted administration priority pursuant to section 503(b)(1)(A) of the Bankruptcy Code as actual, necessary costs and expenses of preserving the estate.

30.    The Debtors respectfully submit that approval of Intercompany Transfers is not needed, as they are a routine and integral part of the Debtors' business. In an abundance of caution, however, the Debtors are seeking such approval.

31.    Courts in this District frequently grant similar relief with respect to continuation of a debtor's cash management system, use of existing bank accounts and business forms, and continuation of Intercompany Transfers. *See, e.g.*, *In re Virgin Orbit Holdings, Inc.*, Case No. 23-10405 (KBO) [D.I. 151] (Bankr. D. Del. Apr. 26, 2023); *In re Stanadyne LLC*, Case No. 23-10207 (TMH) [D.I. 210] (Bankr. D. Del. Apr. 18, 2023); *In re Fast Radius, Inc.* (Case No. 22-11051 (JKS) [D.I. 154] (Bankr. D. Del. Dec. 7, 2022); *In re Gold Standard Baking, LLC*, Case No. 22-10559 (JKS) [D.I. 132] (Bankr. D. Del. July 18, 2022); *In re EYP Group Holdings, Inc.*, Case No. 22-10367 (MFW) [D.I. 137] (Bankr. D. Del. May 24, 2022).[4]

---

[4]    In accordance with Local Rule 7007-2(a)(vii), the Debtors' proposed counsel has copies of each order and will make them available to this Court or to any party that requests them. The orders are also available on this Court's CM/ECF PACER site at the cited docket numbers and on the dates specified above.

**B.      The Court should waive the application of the investment and deposit requirements of section 345(b) of the Bankruptcy Code.**

      **i.      Money Market Investments**

32.      Under the Debtors' investment practices, the Debtors typically invest excess cash in money market funds, specifically the Money Market Investments, that the Debtors regard as cash equivalents.  The Debtors request that this Court waive strict application of the requirements of section 345(b) of the Bankruptcy Code and the Operating Guidelines to the extent the Cash Management System does not comply with such requirements.  Section 345(a) of the Bankruptcy Code authorizes a debtor in possession to make investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  For investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety, "unless the court for cause orders otherwise." 11 U.S.C. § 345(b).

33.      Local Rule 4001-3 provides particularized relief for certain money market funds, by providing cause from section 345(b) of the Bankruptcy Code if the debtor files a certification from the fund that provides that the fund meets the following requirements of Local Rule 4001-3:

    a.   exclusively in United States Treasury bills and United States Treasury Notes owned directly or through repurchase agreements;

    b.   Has received the highest money market fund rating from a nationally recognized statistical rating organization, such as Standard & Poor's or Moody's;

    c.   Has agreed to redeem fund shares in cash, with payment being made no later than the business day following a redemption request by a shareholder,

except in the event of an unscheduled closing of Federal Reserve Banks or the New York Stock Exchange; and

d.  Has adopted a policy that it will notify its shareholders sixty (60) days prior to any change in its investment or redemption policies under (a) and (c) above.

34.     Local Rule 2015-2(B) authorizes the Court to grant interim relief from sections 345(a) and (b) of the Bankruptcy Code until a hearing on the merits of the Debtors' request to waive the investment requirements. Specifically, Local Rule 2015-2(b) provides:

> Except as provided in Local Rule 4001-3, no waiver of the investment requirements of 11 U.S.C. § 345 shall be granted by the Court without notice and an opportunity for hearing in accordance with these Local Rules.  However, if a motion for such a waiver is filed on the first day of a chapter 11 case in which there are more than 200 creditors, or otherwise shown, the Court may grant an interim waiver until a hearing on the debtor's motion can be held.

Rule 2015-2(b).  Here, interim relief is warranted because the Debtors have over 200 creditors between them, and the Debtors operate a carefully managed cash management system.

35.     The Debtors operate a sophisticated enterprise with a complex Cash Management System that provides the Debtors with the ability to transfer funds rapidly to ensure their safety. In light of the foregoing and the safety of the institution that the Debtors propose to utilize as part of their Money Market Investments, the Debtors believe that sufficient cause exists to allow deviation from the investment guidelines set forth in section 345(b) of the Bankruptcy Code. Satisfaction of those requirements would impose needless costs on the Debtors' estates and the process of satisfying those requirements would lead to needless inefficiencies in the management of the Debtors' business.

36.     In accordance with Local Rule 2015-2, the Debtors hereby request that this Court grant them a 45-day extension of the time to comply with the requirements of section 345 of the Bankruptcy Code.  During the extension period, the Debtors propose to discuss with the U.S.

15

Trustee what modifications to their Cash Management System and the Money Market Investments, if any, would be appropriate under the circumstances.

      **ii.**    **Authorized Depositories**

37.      As stated above, certain of the Debtors' Bank Accounts are maintained with Banks that do not appear on the authorized depository list maintained by the U.S. Trustee. Notwithstanding, however, the Debtors submit that there is cause to waive the requirements of section 345 of the Bankruptcy Code and the applicable requirements of the Operating Guidelines under the circumstances of these chapter 11 cases.

38.      Courts may waive compliance with section 345 of the Bankruptcy Code and the Operating Guidelines for "cause," recognizing that they are often impractical and potentially detrimental to a debtor's postpetition business operations and restructuring efforts. *See, e.g.*, *In re Seger*, 444 B.R. 492, 493 (Bankr. D. Mass. 2011) (stating that, for cause the court can waive the requirements of 345(b) for chapter 7 and chapter 11 trustees); *see also In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (finding that cause existed to waive the requirements of 345(b) for the debtor).

39.      The Bank Accounts are each vital to the Cash Management System and the Debtors' ability to operate a global enterprise.  For example, the Debtors' operations in Bermuda, Hong Kong, and Israel require the maintenance of certain Bank Accounts with local branches. Requiring the Debtors to close these prepetition Bank Accounts and seek to open new, compliant Bank Accounts would be both cost-prohibitive and practically impossible under the circumstances. As set forth in detail in the First Day Declaration, the Debtors are the subject of investigations across numerous countries based on alleged prepetition conduct.  It follows that it is likely that the

16

Debtors would not be able to open up new bank accounts in a timely manner; notably KYC and AML requirements would likely bar the Debtors from opening up new accounts at this time.

40.     Further, even if the above would not bar the Debtors from opening up new bank accounts, such an undertaking would distract the Debtors and their employees from the important task of continuing to operate the Debtors' businesses in the ordinary course of business and proceed through these chapter 11 cases.

41.     Accordingly, the Debtors submit that there is substantial "cause" to waive the requirements of section 345 of the Bankruptcy Code and the applicable requirements of the Operating Guidelines with respect to the Debtors' noncompliant Bank Accounts.

**C.     The Court should authorize Banks participating in the Cash Management System to honor certain transfers and charge Bank Fees and certain other amounts.**

42.     In addition to this Motion, the Debtors filed various "first day" motions, including, without limitation, a motion for authorization to pay prepetition claims.  With respect to some of these claims, the Debtors may have issued checks prior to the Petition Date that have yet to clear the banking system and, but for the entry of an order of the Court, such checks would not clear. With respect to other prepetition liabilities, the Debtors intend to issue checks postpetition on account of such obligation once the Court enters an order permitting the Debtors to take such action.  The Debtors intend to inform their Banks regarding which prepetition checks should be honored pursuant to orders of the Court authorizing such payments.  Accordingly, the Debtors request that the Banks be authorized to accept and honor all representations from any of the Debtors as to which checks, drafts, wires, or automatic clearing house transactions ("ACH Transfers") should be honored or dishonored consistent with any order of this Court and governing

law, whether such checks, drafts, wires, or ACH Transfers are dated prior to, on or subsequent to the Petition Date.

43.     Pursuant to the relief requested in this motion, the Banks will not be liable to any party on account of: (a) following the Debtors' instructions, directions or representations as to any order of this Court, any prepetition check or other item; (b) honoring any prepetition check or item in a good-faith belief that the Court authorized such prepetition check or item to be honored; (c) a mistake made despite implementation of reasonable item-handling procedures; or (d) honoring any prepetition check or item presented postpetition but prior to the entry of the Interim Order or Final Order on this motion.  Such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

44.     Finally, the Debtors request authority for the Banks to charge, and the Debtors to pay or honor, the Bank Fees, and to charge back to the appropriate accounts (or seek reimbursement from the Debtors of) any amounts resulting from returned or dishonored checks or other returned items, including returned items that result from ACH Transfers, wire transfers or other electronic transfers of any kind (collectively, the "Returned Items"), regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the Returned Items relate to prepetition or postpetition items or transfers.

45.     The Debtors require this relief to minimize any disruption to the Cash Management System and their Bank Accounts and to assist them in facilitating a smooth transition to chapter 11.

46.     In sum, the requested relief is necessary and appropriate, and in the best interests of the Debtors, their estates, creditors and other parties in interest and, therefore, should be granted. No previous request for the relief sought herein has been made to this or any other court.

## SATISFACTION OF BANKRUPTCY RULE 6003(b)

47.     Bankruptcy Rule 6003(b) provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting…a motion to…pay all or part of a claim that arose before the filing of a petition." Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to maximize value or threaten the debtor's future as a going concern.

48.     As described in this motion and in the First Day Declaration, the Debtors' business operations rely heavily on their efficient and uninterrupted Cash Management System. Requiring the Debtors to adopt a new, segregated system would be prohibitively costly, would hinder the restructuring process, and may, in fact, hamper the ongoing international investigations into the Debtors' prepetition conduct. Based on the foregoing, the Debtors submit that the relief requested in this motion is necessary to avoid immediate and irreparable harm, and therefore, Bankruptcy Rule 6003(b) is satisfied.

## REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) and (h)

49.     To implement the foregoing successfully, and given the nature of the relief requested in this Motion, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the relief requested in this motion is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

ACTIVE\1602362750.1

## **RESERVATION OF RIGHTS**

50.     Nothing contained in this Motion is intended to nor shall: (a) be construed as an admission as to the validity of any claim against the Debtors; (b) impair, prejudice, waive or otherwise affect the rights of the Debtors or their estates to dispute the amount of, basis for, nature, validity or priority of any claim against the Debtors; (c) impair, prejudice, waive or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action which may exist against any third party; (d) be construed as an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between any Debtor and any third party under section 365 of the Bankruptcy Code; or (e) create any rights in favor of, or enhance the status or nature of any claim held by, any person.  Any requested authorization to pay the claims described in this Motion should not be deemed a direction to the Debtors to pay such claims; rather, the Debtors will make any such payments in their discretion.  In addition, any payment made pursuant to an order of the Court granting the relief requested in this Motion is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of any of the Debtors' rights to subsequently dispute such claim.

## **NOTICE**

51.     Notice of this Motion will be provided to: (a) the Office of the United States Trustee for Region 3 (Attn: Timothy Fox, Esq. (Timothy.Fox@usdoj.gov)); (b) the Office of the United States Attorney for the District of Delaware; (c) each of the parties included on the Debtors' consolidated top 30 creditors list; (d) the Internal Revenue Service; (e) the attorney general for each state in which the Debtors operate; (f) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (g) any other party entitled to notice under Local Rule 9013-1.  Because this motion seeks "first day" relief, notice of this motion and any order entered in

20

connection with this Motion will be served on all parties required by Local Rule 9013-1(m).  The Debtors respectfully submit that such notice is sufficient and no other or further notice of this motion is required.

WHEREFORE, the Debtors respectfully request that the Court enter orders, substantially in the forms of the Proposed Interim Order and Proposed Final Order, granting the relief requested in this Motion, and grant such other and further relief to the Debtors as the Court may deem just and proper.

Dated: August 18, 2023
Wilmington, Delaware

**DLA PIPER LLP (US)**

*/s/ R. Craig Martin*
R. Craig Martin (DE 5032)
Stuart M. Brown (DE 4050)
Matthew Sarna (DE 6578)
1201 N. Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: craig.martin@us.dlapiper.com
        stuart.brown@us.dlapiper.com
        matthew.sarna@us.dlapiper.com

*Proposed Counsel for the Debtors*

ACTIVE\1602362750.1