**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>VESTTOO LTD., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11160 (MFW)<br><br>(Jointly Administered)<br><br>**Objection Deadline: October 27, 2023, at 4:00 p.m. (ET)**<br>**Hearing Date: November 8, 2023 at 10:30 a.m. (ET)** |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) MAINTAIN THEIR INSURANCE COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE COVERAGE, AND (II) GRANTING RELATED RELIEF**

Vesttoo Ltd. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), by and through their proposed counsel, DLA Piper LLP (US), hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached to this Motion as **Exhibit A** (the "Proposed Order"), (i) authorizing, but not directing, the Debtors, in their sole discretion, to (a) maintain their insurance program and honor prepetition and postpetition obligations with respect thereto; and (b) renew, supplement, modify, extend, terminate, or purchase insurance coverage in the ordinary course of business; and (ii) granting related relief. In support of this Motion, the Debtors rely upon and incorporate by reference the *Amended and Restated Declaration of Ami Barlev in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 27] (the "First Day Declaration"),[2] and respectfully state as follows.

---

[1] Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/vesttoo.

[2] Capitalized terms used but not defined in this Motion shall have the meaning given to them in the First Day Declaration.

**JURISDICTION AND VENUE**

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these chapter 11 cases, the Debtors, property of the Debtors' estates and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

2.  Under Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.  Venue of these chapter 11 cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4.  The statutory bases for the relief requested in this Motion are sections 105, 363, 364, 1107, 1108, and 1112 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

5.  On August 14 and 15, 2023 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their property, continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee or examiner has been appointed in the chapter 11 cases.  On August 31, 2023, the office of the United States Trustee (the "U.S. Trustee") appointed an official committee

of unsecured creditors (the "Committee") in these chapter 11 cases. An initial meeting of creditors pursuant to section 341 of the Bankruptcy Code was held on September 18, 2023.

6. Additional factual background regarding the Debtors, including their business operations, capital and debt structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the First Day Declaration, which is incorporated herein by reference.

### A. Insurance Policies

7. The Debtors' insurance program comprises commercial insurance policies maintained by the Debtors, a list of which is attached to this Motion as **Schedule 1**, that are administered through various insurers, and which provide coverage for, among other things: business owners' liability, workers' compensation, and directors and officers liability.

8. Maintenance of the Debtors' insurance program is essential to the continued operation of the Debtors' business and the laws of the various jurisdictions in which the Debtors operate.

   i. *Commercial Insurance Policies*

9. In the ordinary course of the Debtors' business, the Debtors maintain numerous insurance policies providing coverage for, among other things: business owners' liability, property, umbrella, workers' compensation, and management liability including directors' and officers' liability (the "D&O Policies"), set forth in **Schedule 1** to this Motion (collectively, the "Insurance Policies"). By this Motion, the Debtors seek authority to assume and otherwise maintain all of their insurance policies with Lloyds Syndicate, Allianz Global Corporate & Specialty Re, Chubb, StarStone National Insurance Company, Menora, Scottsdale Insurance Company, and Phoenix Insurance Company (collectively the "Insurance Carriers"). The Insurance Policies protect the Debtors and their estates from various losses incurred. Additionally, the D&O

Policies protect the Debtors and their directors and officers and is essential in order to retain the Debtors' qualified and dedicated senior management. As of the Petition Date, the Debtors do not owe any prepetition amounts to the various Insurance Carriers with whom the Debtors maintain Insurance Policies.

      ii.  *Insurance Brokers*

10.    The Debtors employ Howden RE Israel Ltd. as their insurance broker (the "Broker") to assist the Debtors in procuring and negotiating elements of the Debtors' insurance program in Israel in the ordinary course of business. The Debtors do not employ any other brokers for their U.S. policies. The Broker is essential to the Debtors' ability to secure insurance coverage, as it structures and manages the Debtors' insurance program in a reasonable and prudent manner and enables the Debtors to realize considerable savings in procuring insurance coverage. For instance, the Debtors may not have access to certain key markets unless represented by the Broker. As of the Petition Date, the Debtors owe the Broker approximately $8,040.55. Accordingly, the Debtors seek this Court's authority to pay the prepetition amounts owed to the Broker to ensure the Broker continues to provide services to the Debtors. The Debtors also seek the authority to continue using the service of the Broker in the ordinary course of business and to pay broker fees, if any, as necessary in connection with procurement and maintenance of their insurance program.

## RELIEF REQUESTED

11.    Pursuant to sections 105, 363, 364, 1107, 1108, and 1112 of the Bankruptcy Code, the Debtors request entry of an order, substantially in the form of the Proposed Order, (i) authorizing, but not directing, the Debtors, in their sole discretion, to (a) maintain their insurance program and honor prepetition and postpetition obligations with respect thereto; and (b) renew,

supplement, modify, extend, terminate, or purchase insurance coverage in the ordinary course of business; and (ii) granting related relief.

## BASIS FOR RELIEF

**A.    The Bankruptcy Code and U.S. Trustee Operating Guidelines require the continuation of the insurance program.**

12.    Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). In addition, in many instances, the coverage provided under the insurance program is required by the regulations, laws, and contracts that govern the Debtors' commercial activities as well as the United States Trustee for Region 3 Operating Guidelines for Chapter 11 Cases (the "Operating Guidelines"). The Debtors believe it is essential to their estates, and consistent with the Bankruptcy Code and the Operating Guidelines, that they (a) maintain and continue to make all payments required under their insurance program and (b) have the authority to supplement, amend, extend, renew, or replace the insurance program coverage as needed, in their judgment, without further order of the Court.[3]

**B.    Sections 363(b) and 105(a) of the Bankruptcy Code authorize the payment of the Debtors' insurance obligations.**

13.    To the extent applicable, the Debtors respectfully submit that payment of the insurance obligations, in the Debtors' sole discretion, is necessary to maintain the continuity of the Debtors' operations and effectuate an expeditious sale process or reorganization and, therefore, should be authorized under section 363(b) of the Bankruptcy Code. Section 363(b)(1) of the

---

[3] The Debtors believe that continuation of the insurance program and the ability to supplement, amend, extend, renew or replace such insurance program is authorized in the ordinary course under section 363(c)(1) of the Bankruptcy Code. The Debtors seek such relief out of an abundance of caution, however, given the importance of the insurance policies to the protection of their estates.

5

ACTIVE\1602810449.4

Bankruptcy Code authorizes the Court, after notice and a hearing, to permit a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  To approve the use of assets outside the ordinary course of business under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions."  *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.* (*In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted).

14. To supplement these explicit powers, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under section 105 of the Bankruptcy Code and the doctrine of necessity, the bankruptcy court may permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor and to enable a successful reorganization.  *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (noting that "necessity of payment" doctrine provides that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [debtor] during reorganization, payment may be authorized even if it is made out of corpus."); *In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (bankruptcy courts may exercise equitable powers to authorize payment of prepetition debt where such payment is necessary to preserve the going concern value of a debtor's business); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (section 105 empowers bankruptcy courts to

authorize payment of prepetition debt "when such payment is needed to facilitate the rehabilitation of the debtor").

15. The Debtors require maintainenance of uninterrupted insurance coverage. If the Debtors fail to pay any premiums, deductibles, or related fees under the insurance program the applicable Insurance Carrier may seek to terminate the existing insurance policy, or they may decline to renew the insurance policy or refuse to insure the Debtors in the future. If the insurance policies lapse without renewal, the Debtors could be exposed to substantial liability for personal and/or property damages to the detriment of all stakeholders.

16. In addition, the Debtors would be in default under certain key contracts and applicable law, which require that the Debtors maintain adequate coverage. Consequently, if the Debtors' insurance policies lapsed, the Debtors would be required to obtain replacement coverage on an emergency basis and, likely, at significant expense. Therefore, the continuation of the insurance programs on an uninterrupted basis and the payment of the insurance obligations are essential to preserve the Debtors' business and the value of the Debtors' estates for all parties in interest in these chapter 11 cases.

**C.    Payment of the insurance obligations is a proper exercise of the Debtors' fiduciary duties under sections 1107(a) and 1108 of the Bankruptcy Code.**

17. In addition, the Court has the authority, pursuant to its equitable powers under section 105(a), to authorize the relief request because such relief is necessary for the Debtors to carry out their fiduciary duties under sections 1107(a) and 1108 of the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code imposes an implied duty on the debtor in possession to "protect and conserve property" of the estate on behalf of a debtor's creditors and other parties in interest. *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 474 (3d Cir. 1998) (citation omitted); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("Implicit in the duties of . . . a debtor in

7

possession . . . is the duty of such a fiduciary to protect and preserve the estate, including an operating business's going-concern value."); *see also Penick Pharm. v. McManigle* (*In re Penick Pharm., Inc.*), 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee."); *In re Advanced Contracting Sols., LLC*, 582 B.R. 285, 304 (Bankr. S.D.N.Y. 2018) ("As fiduciaries, the debtor-in-possession and its managers are obligated to treat all parties to the case fairly, maximize the value of the estate . . . and protect and conserve the debtor's property.").

18. Courts in this District frequently grant similar relief with respect to maintenance of a debtor's insurance policies, and renewing, terminating, or purchasing new coverage in the ordinary course. *See, e.g.*, *In re AeroFarms, Inc.*, Case No. 23-10737 (MFW) [D.I. 97] (Bankr. D. Del. June 29, 2023); *In re Fast Radius, Inc.*, Case No. 22-11051 (BLS) [D.I. 130] (Bankr. D. Del. December 6, 2022); *In re Gold Standard Baking, LLC*, Case No. 22-10559 (JKS) [D.I. 137] (Bankr. D. Del. July 18, 2022); *In re TPC Group Inc.*, Case No. 22-10493 (CTG) [D.I. 385] (Bankr. D. Del. June 7, 2022); *In re Ruby Pipeline, L.L.C.*, Case No. 22-10278 (CTG) [D.I. 136] (Bankr. D. Del. May 24, 2022); *In re EYP Group Holdings, Inc.*, Case No. 22-10367 (MFW) [D.I. 132] (Bankr. D. Del. May 23, 2022); *In re CalPlant I Holdco, LLC*, Case No. 21-11302 (JTD) [D.I. 90] (Bankr. D. Del. Oct. 22, 2021).[4]

**D.     Cause exists to authorize the Debtors' financial institutions to honor checks and electronic fund transfers.**

19. The Debtors request that the Court authorize and direct the Banks and other financial institutions (the "Banks") to receive, process, honor and pay all checks and drafts

---

[4] In accordance with Local Rule 7007-2(a)(vii), the Debtors' proposed counsel has copies of each order and will make them available to this Court or to any party that requests them. The orders are also available on this Court's CM/ECF PACER site at the cited docket numbers and on the dates specified above.

presented for payment and to honor all electronic payment requests related to the obligations described in this Motion, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date; *provided* that sufficient funds are on deposit in the applicable bank accounts to cover such payments. The Debtors further request that the Banks be authorized to rely on the Debtors' designation of any particular checks or electronic payment requests as authorized in accordance with the relief requested in this Motion. The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers on account of the obligations described in this Motion to replace any prepetition checks or electronic fund transfer requests that may be dishonored as a result of the commencement of these chapter 11 cases.

20. The Debtors have sufficient funds to pay any amounts described in this Motion in the ordinary course of business. The Debtors also represent that, under the Debtors' existing cash management system, the Debtors can readily identify checks or electronic fund transfer requests as relating to an authorized payment requested in this Motion. Accordingly, the Debtors believe that checks or electronic fund transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that the Banks should be authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor and pay any and all checks or electronic fund transfer requests with respect to the payments requested in this Motion.

## **RESERVATION OF RIGHTS**

21. Nothing contained in this Motion is intended to or shall: (a) be construed as an admission as to the validity of any claim against the Debtors; (b) impair, prejudice, waive or otherwise affect the rights of the Debtors or their estates to dispute the amount of, basis for, nature, validity or priority of any claim against the Debtors; (c) impair, prejudice, waive or otherwise

9

affect the rights of the Debtors or their estates with respect to any and all claims or causes of action which may exist against any third party; (d) be construed as an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between any Debtor and any third party under section 365 of the Bankruptcy Code; or (e) create any rights in favor of, or enhance the status or nature of any claim held by, any person.  Authorization to pay the claims described in this Motion should not be deemed a direction to the Debtors to pay such claims; rather, the Debtors will make any such payments in their business judgment.  In addition, any payment made pursuant to an order of the Court granting the relief requested in this Motion is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of any of the Debtors' rights to subsequently dispute such claim.

## **NOTICE**

22.     Notice of this Motion will be provided to: (a) the Office of the United States Trustee for Region 3 (Attn: Timothy Fox, Esq. (Timothy.Fox@usdoj.gov)); (b) the Office of the United States Attorney for the District of Delaware; (c) the Committee; (d) the attorney general for each state in which the Debtors operate; (e) the Insurance Carriers; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that such notice is sufficient and no other or further notice of this Motion is required.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, and granting the relief requested in this Motion and such other and further relief as the Court may deem just and proper.

Dated: October 13, 2023
       Wilmington, Delaware

**DLA PIPER LLP (US)**

/s/ R. Craig Martin
R. Craig Martin (DE 5032)
Stuart M. Brown (DE 4050)
Matthew Sarna (DE 6578)
1201 N. Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: craig.martin@us.dlapiper.com
      stuart.brown@us.dlapiper.com
      matthew.sarna@us.dlapiper.com

*Proposed Counsel for the Debtors*