**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| VESTTOO LTD., *et al.*,[1] | Case No. 23-11160 (MFW) |
| Debtors. | (Jointly Administered) |

**ORDER APPROVING DISCLOSURE STATEMENT ON FINAL BASIS AND
CONFIRMING OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
SECOND MODIFIED SECOND AMENDED CHAPTER 11 PLAN OF
LIQUIDATION FOR VESTTOO LTD. AND ITS DEBTOR AFFILIATES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

having:[2]

    a.      commenced these chapter 11 cases (these "Chapter 11 Cases") on August 14, 2023 and August 15, 2023 (the "Petition Date") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and

    b.      continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code.

The Official Committee of Unsecured Creditors (the "Committee" or the "Plan

Proponent"), having:

    a.      obtained, on November 8, 2023, entry of an *Order Terminating Debtors' Exclusive Periods to File and Solicit Acceptances of a Plan Solely With Respect to the Official Committee of Unsecured Creditors* [Docket No. 382] (the "Order Terminating Exclusivity"), which terminated the Debtors' exclusive periods to file a plan and solicit acceptances thereof solely with respect to the Committee;

---

[1]  Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/vesttoo.

[2]  Capitalized terms used but not otherwise defined in this order (the "Confirmation Order") shall have the meanings given to them in the *Official Committee of Unsecured Creditors' Amended Combined Disclosure Statement and Plan of Liquidation for Vesttoo Ltd. and its Debtor Affiliates*, attached hereto as **Exhibit A**. The rules of interpretation set forth in Article I.B of the Plan shall apply to this Confirmation Order.

b.      filed on November 21, 2023, the (i) *Official Committee of Unsecured Creditors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation for Vesttoo Ltd. and its Debtor Affiliates* [Docket No. 418] and the (ii) *Motion for Entry of an Order (A) Approving the Disclosure Statement on an Interim Basis, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, (C) Approving the Form of Ballot and Solicitation Materials, (D) Establishing Voting Record Date, (E) Fixing the Date, Time, and Place for the Hearing on Final Approval of the Disclosure Statement and Confirmation of the Plan and the Deadline for Filing Objections Thereto, and (F) Approving Related Notice Procedures and Deadlines* [Docket No. 419];

c.      filed on December 18, 2023 the *Official Committee of Unsecure Creditors' Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation for Vesttoo Ltd. and Its Debtor Affiliates* [Docket No. 461];

d.      obtained, on December 20, 2023, entry of the *Order (A) Approving the Disclosure Statement on an Interim Basis, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, (C) Approving the Form of Ballot and Solicitation Materials, (D) Establishing Voting Record Date, (E) Fixing the Date, Time, and Place for the Hearing on Final Approval of the Disclosure Statement and Confirmation of the Plan and the Deadline for Filing Objections Thereto, and (F) Approving Related Notice Procedures and Deadlines* [Docket No. 473] (the "Solicitation Procedures Order"), which Solicitation Procedures Order approves the Disclosure Statement on an interim basis and approves solicitation procedures (the "Solicitation Procedures") and related notices, forms, and ballots (collectively, the "Solicitation Materials");

e.      filed on December 21, 2023 the solicitation version of the *Official Committee of Unsecured Creditors' Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation for Vesttoo Ltd. and Its Debtor Affiliates* [Docket No. 476];

f.      caused the Solicitation Materials and all other notices and papers described in the Solicitation Procedures Order to be served on December 26, 2023, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Solicitation Procedures Order, as evidenced by, among other things, the *Certificate of Service of Solicitation Materials* [Docket No. 534] (the "Solicitation Affidavit");

g.      caused a *Cure Notice to Counterparties to Executory Contracts and Unexpired Leases that May be Assumed and Assigned* to be served on or about January 9, 2024, as evidenced by the Certificate of Mailing [Docket No. 661] (the "Cure Notice Affidavit");

h.      filed on January 16, 2024, the *Notice of Filing Plan Supplement to the Official Committee of Unsecured Creditors' Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation for Vesttoo Ltd. and its Debtor Affiliates* [Docket No. 562] (the "Initial Plan Supplement"), and caused it to be served on that same

2

day as evidenced by the *Certificate of Mailing* [Docket No. 576] (the "<u>Initial Plan Supplement Affidavit</u>");

i. filed on January 19, 2024 the *Notice of Filing of Amended Plan Supplement* [Docket No. 578] (the "<u>Amended Plan Supplement</u>", and together with the Initial Plan Supplement, as they may be further modified, supplemented, or otherwise amended from time to time, the "<u>Plan Supplement</u>") and caused it to be served on that same day as evidenced by the *Certificate of Mailing* [Docket No. 583] (the "<u>Amended Plan Supplement Affidavit</u>", and together with the Initial Plan Supplement Affidavit, the "<u>Plan Supplement Affidavits</u>");

j. caused to be filed on January 30, 2024, the *Declaration of Emily Young, on Behalf of Epiq Corporate Restructuring, LLC, Regarding Solicitation and Tabulation of Ballots Cast on Official Committee of Unsecured Creditors' Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation for Vesttoo Ltd. and its Debtor Affiliates* [Docket No. 610] (the "<u>Voting Declaration</u>");

k. filed on February 15, 2024, the *Official Committee of Unsecured Creditors' Memorandum of Law in Support of Confirmation of the Official Committee of Unsecured Creditors' Second Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation for Vesttoo Ltd. and Its Debtor Affiliates* [Docket No. 668] (the "<u>Confirmation Brief</u>");

l. filed on February 15, 2024, the *Declaration of Richard Newman in Support of the Official Committee of Unsecured Creditors' Second Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation for Vesttoo Ltd. and Its Debtor Affiliates* [Docket No. 669] (the "<u>Initial Newman Declaration</u>");

m. caused the Confirmation Brief and Newman Declaration to be served on February 15, 2024, as evidenced in the Certificate of Service [Docket No. 674] (the "<u>Confirmation Materials Affidavit</u>");

n. filed on February 14, 2024, the *Motion of the Official Committee of Unsecured Creditors for Approval, Pursuant to Section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure of the Settlement Among the Committee and Clear Blue Regarding Vesttoo Bay XIV, Limited Partnership* [Docket No. 656] (the "<u>Vesttoo Bay XIV Settlement Motion</u>");

o. caused the Vesttoo Bay XIV Settlement Motion to be served on February 14, 2024, as evidenced in the *Certificate of Mailing* [Docket No. 667];

p. filed on February 17, 2024, the *Official Committee of Unsecured Creditors' Second Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation for Vesttoo Ltd. and Its Debtor Affiliates* [Docket No. 678];

q. filed on February 19, 2024, the *Motion of the Official Committee of Unsecured Creditors for Approval, Pursuant to Sections 105(a), 363, 1123, and 1141 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure of*

*ACTIVE 695212060*

*the Settlement Among the Committee and Chaucer Regarding Vesttoo Bay XXIV, Limited Partnership* [Docket No. 685] (the "Vesttoo Bay XXIV Settlement Motion") and caused it to be served on that same day as evidenced by the Certificate of Service [Docket Nos. 702, 716];

r. filed on February 20, 2024, the *Motion of the Official Committee of Unsecured Creditors for Approval, Pursuant to Sections 105(a), 363, 1123, and 1141 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure of the Settlement Among the Committee, Beazley, and Porch Regarding Vesttoo Bay XIX, Limited Partnership* [Docket No. 692] (the "Vesttoo Bay XIX Settlement Motion");

s. caused the Vesttoo Bay XIX Settlement Motion to be served on February 21, 2024, as evidenced in the *Certificate of Service* [Docket Nos. 704, 716];

t. filed on February 21, 2024, the *Notice of Filing of Second Amended Plan Supplement* [Docket No. 697] (the "Second Amended Plan Supplement", and together with the Initial Plan Supplement and Amended Plan Supplement, as they may be further modified, supplemented, or otherwise amended from time to time, the "Plan Supplement") and caused it to be served on that same day as evidenced by the *Certificate of Mailing* [Docket Nos. 704, 716] (the "Second Amended Plan Supplement Affidavit", and together with the Initial Plan Supplement Affidavit and Amended Plan Supplement Affidavit, the "Plan Supplement Affidavits");

u. filed on February 21, 2024, the *Official Committee of Unsecured Creditors' Modified Second Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation for Vesttoo Ltd. and Its Debtor Affiliates* [Docket No. 711] (the "Modified Second Amended Combined Disclosure Statement and Plan);

v. filed on February 21, 2024, the *Supplemental Declaration of Richard Newman in Support of the Official Committee of Unsecured Creditors' Second Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation for Vesttoo Ltd. and Its Debtor Affiliates* [Docket No. 715] (the "Supplemental Newman Declaration", and together with the Initial Neman Declaration, the "Newman Declarations") and caused it to be served that same day as evidenced in the Certificate of Mailing [Docket No. 716];

w. filed on February 27, 2024, the *Notice of Filing of Stipulation Among (I) Chaucer Insurance Company DAC and Chaucer Syndicates Limited, as Managing Agent of Lloyd's Syndicate 1084, (II) the Official Committee of Unsecured Creditors, and (III) the Joint Provisional Liquidators of White Rock Insurance (SAC) Ltd.* [Docket No. 752] and caused it to be served on February 28, 2024, as evidenced in the *Certificate of Service* [Docket No. 756] and *Supplemental Certificate of Service* [Docket No. 757]; and

x. filed on February 28, 2024, the *Official Committee of Unsecured Creditors' Second Modified Second Amended Combined Disclosure Statement and Chapter 11 Plan*

*of Liquidation for Vesttoo Ltd. and Its Debtor Affiliates* [Docket No. 753] (the "Second Modified Second Amended Combined Disclosure Statement and Plan", and as may be further amended, supplemented, or otherwise modified from time to time, and including all exhibits and supplements thereto, the "Combined Disclosure Statement and Plan" or the "Plan").

This Court having:

a.    entered the Order Terminating Exclusivity on November 8, 2023;

b.    entered the Solicitation Procedures Order on December 20, 2023;

c.    set January 23, 2024, at 4:00 p.m. (prevailing Eastern Time) (the "Voting and Plan Objection Deadline") as the deadline for voting on the Plan and deadline for filing objections to confirmation of the Plan;

d.    set February 6, 2024, at 10:30 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Combined Hearing, in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, and adjourned the Combined Hearing to February 22, 2024, at 3:00 p.m. (prevailing Eastern Time), further adjourned the Combined Hearing to February 26, 2024, at 10:00 a.m. (prevailing Eastern Time), further adjourned the Combined Hearing to February 27, 2024, at 1:00 p.m. (prevailing Eastern Time), and further adjourned the Combined Hearing to February 28, 2024, at 2:00 p.m. (prevailing Eastern Time);

e.    reviewed the Combined Disclosure Statement and Plan, the Plan Supplement, the Confirmation Brief, the Newman Declarations, the Voting Declaration, and all pleadings, exhibits, statements, responses, and comments regarding confirmation of the Plan, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

f.    held the Combined Hearing;

g.    heard the statements and arguments made by counsel in respect of Confirmation;

h.    considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the Combined Hearing;

i.    entered rulings on the record at the Combined Hearing;

j.    overruled all objections to the Plan and to Confirmation, except as otherwise stated or indicated on the record, and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

k.    taken judicial notice of all papers and pleadings filed in these Chapter 11 Cases.

NOW, THEREFORE, after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact and conclusions of law and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.    Jurisdiction and Venue.**

1.    Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2). The Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012. The Plan Proponent has confirmed its consent, pursuant to Rule 9013-1(f) of the *Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware* (the "**Local Rules**"), to the entry of a final order by the Court in accordance with the terms set forth herein to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. The Committee is a proper plan proponent under section 1121(c) of the Bankruptcy Code.

**B.    Eligibility for Relief.**

2.    The Debtors were and continue to be entities eligible for relief under section 109 of the Bankruptcy Code.

**C.    Commencement and Joint Administration of these Chapter 11 Cases.**

3.    On the respective Petition Date, the Debtors commenced these Chapter 11 Cases. On August 23, 2023, the Court entered an *Order Directing the Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 34] authorizing and directing the joint administration of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b). The Debtors have operated their

*ACTIVE 695212060*

businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**D.      Appointment of Creditors' Committee.**

4.      On August 31, 2023, the U.S. Trustee appointed the Committee to represent the interests of the unsecured creditors of the Debtors in these Chapter 11 Cases and filed the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 95]. On September 20, 2023, the U.S. Trustee reconstituted the Committee and filed the *Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 151].

**E.      Plan Supplement.**

5.      The Plan Supplement complies with the terms of the Plan, and the Plan Proponent provided good and proper notice of the filing of the Plan Supplement in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures Order, and the facts and circumstances of these Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement.

**F.      Modifications to the Plan.**

6.      Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan that are included in the Second Modified Second Amended Combined Disclosure Statement and Plan (the "Plan Modifications") constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any Claim or Interest. The Plan Modifications incorporate the Vesttoo Bay XIV Settlement, the Vesttoo Bay XIX Settlement, the Vesttoo Bay XXIV Settlement, the Chaucer/White Rock JPLs Settlement, and the Committee/JPL Settlement, which, among other things, provide for the consensual resolution of disputes regarding the use of certain Debtors' Cash, establish procedures for the Wind Down

7

Debtors and Liquidating Trust to allocate assets and expenses among the Debtors, and clarify certain terms of the Plan, such as creditor setoff rights and the treatment of Indemnification Obligations. Adequate and sufficient notice of the Plan Modifications has been provided.

7.      In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified to the Plan Modifications, is properly before this Court and all votes cast with respect to the Plan prior to such modifications shall be binding and shall apply with respect to the Plan.

**G.      Objections Overruled.**

8.      Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Court on the record at the Combined Hearing is hereby incorporated by reference. All unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

**H.      Solicitation Procedures Order.**

9.      On December 20, 2023, the Court entered the Solicitation Procedures Order, which, among other things, set the Voting and Plan Objection Deadline.

**I.      Transmittal and Mailing of Materials; Notice.**

10.      As evidenced by the Solicitation Affidavit, the Plan Supplement Affidavits, the Confirmation Materials Affidavit, and the Voting Declaration, the Plan Proponent provided due, adequate, and sufficient notice of the Combined Disclosure Statement and Plan, the Solicitation Procedures Order, the Solicitation Materials, the Plan Supplement, and all the other materials distributed by the Plan Proponent in connection with the Confirmation of the Plan in compliance

8

with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Local Rules, and the procedures set forth in the Solicitation Procedures Order. The Plan Proponent provided due, adequate, and sufficient notice of the Voting and Plan Objection Deadline, the Combined Hearing, and any applicable bar dates and hearings described in the Solicitation Procedures Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Solicitation Procedures Order. No other or further notice is or shall be required.

**J.      Solicitation.**

11.      The Plan Proponent solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with sections 1125 and 1126, and all other applicable sections, of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Solicitation Procedures Order, the Local Rules, and all other applicable rules, laws, and regulations.

**K.      Voting Report.**

12.      Before the Combined Hearing, the Plan Proponent filed the Voting Declaration. The procedures used to tabulate ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

13.      Holders of Claims in Classes 3 and 3A (the "Voting Classes") were eligible to vote to accept or reject the Plan in accordance with the Solicitation Procedures. Holders of Claims in Classes 1 and 2 (the "**Deemed Accepting Classes**") are Unimpaired and conclusively presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan. Holders of Claims and Interests in Classes 4, 5, 6, and 7 (the "**Deemed Rejecting Classes**") are Impaired and conclusively presumed to reject the Plan and, therefore, did not vote to accept or reject the Plan.

9

**L.      Bankruptcy Rule 3016.**

14.      The Combined Disclosure Statement and Plan was dated and identified the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Plan Proponent appropriately filed the Combined Disclosure Statement and Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction and exculpation provisions of the Plan are in bold font and with specific and conspicuous language, and the Combined Disclosure Statement and Plan describes all acts to be enjoined and identifies the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

**M.      Adequacy of Disclosure Statement**

15.      The Disclosure Statement embodied within the Combined Disclosure Statement and Plan contains extensive material information regarding the Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the Plan. Additionally, the Disclosure Statement, including the various notices and the Ballot, contains adequate information as that term is defined in section 1125(a) of the Bankruptcy Code and complies with any additional requirements of the Bankruptcy Code, the Bankruptcy Rules, and applicable nonbankruptcy law.

**N.      Burden of Proof.**

16.      The Plan Proponent has met its burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for confirmation. Each witness who testified on behalf of the Plan Proponent in connection with the Combined Hearing was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**O.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

17.      The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**a. Section 1129(a)(1) – Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

18.     The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

**i.   Sections 1122 and 1123(a)(1) – Proper Classification.**

19.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article VII of the Plan provides for the separate classification of Claims and Interests into different Classes based on differences in the legal nature or priority of such Claims and Interests. Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not implemented for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among holders of Claims or Interests.

20.     In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims or Interests contains only Claims or Interests substantially similar to the other Claims or Interests within that Class. Accordingly, the Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

**ii.   Section 1123(a)(2) – Specification of Unimpaired Classes.**

21.     Article VII of the Plan specifies that Claims in the Deemed Accepting Classes are Unimpaired under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

**iii.   Section 1123(a)(3) – Specification of Treatment of Voting Classes.**

22.     Article VII of the Plan specifies the treatment of each Voting Class under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

*ACTIVE 695212060*

### iv.  Section 1123(a)(4) – No Discrimination.

23.     Article VII of the Plan provides the same treatment to each Claim or Interest in any particular Class, as the case may be, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### v.  Section 1123(a)(5) – Adequate Means for Plan Implementation.

24.     The Plan and the documents included in the Plan Supplement provide adequate and proper means for the Plan's execution and implementation, including, but not limited to:  (a) the cancellation of certain existing agreements, obligations, instruments, and Interests; (b) the appointment of the Wind Down Officer to effectuate the Wind Down of the Wind Down Debtors in accordance with the Wind Down Agreement and the Plan; (c) the establishment and funding of the Liquidating Trust pursuant to the Liquidating Trust Agreement and the transfer of the Liquidating Trust Assets to the Liquidating Trust free and clear of all Liens, Claims, charges, or other encumbrances, subject only to the Liquidating Trust Interests and except as set forth in Article XII.L.3 of the Plan; (d) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents in furtherance of the Plan; (e) the authorization, approval, and entry of corporate actions under the Plan; and (f) the authorization for the Wind Down Officer and the Liquidating Trustee, as applicable, to take all actions necessary to effectuate the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### vi.  Section 1123(a)(6) – Non-Voting Equity Securities.

25.     No equity securities are being issued pursuant to the Plan. Accordingly, section 1123(a)(6) of the Bankruptcy Code does not apply.

*ACTIVE 695212060*

### vii. Section 1123(a)(7) – Directors, Officers, and Trustees.

26.     The Plan does not provide for the reorganization of the Debtors. The Liquidating Trust Assets will be vested in the Liquidating Trust, which will be administered by the Liquidating Trustee, and the Remaining Assets will be vested in the Wind Down Debtors, which will be administered by the Wind Down Officer. The Plan, the Wind Down Agreement, and the Liquidating Trust Agreement provide for the selection of the Wind Down Officer and the Liquidating Trustee in a manner and on terms consistent with the interests of creditors and equity holders and public policy. Moreover, the Plan Proponent has disclosed the identity of the Wind Down Officer and the Liquidating Trustee. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

### b.  Section 1123(b) – Discretionary Contents of the Plan.

27.     The Plan contains various provisions that may be construed as discretionary and not necessary for confirmation under the Bankruptcy Code. Any such discretionary provision complies with section 1123(b) of the Bankruptcy Code and is not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, the Plan satisfies section 1123(b).

### i.     Impairment/Unimpairment of Any Class of Claims or Interests.

28.     Pursuant to the Plan, Article VII of the Plan impairs or leaves Unimpaired, as the case may be, each Class of Claims or Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

### ii.    Assumption and Rejection of Executory Contracts and Unexpired Leases.

29.     Article X of the Plan addresses the assumption and rejection of executory contracts and unexpired leases and meets the requirements of sections 365(b) and 1123(b) of the Bankruptcy Code. Consistent with section 1123(b)(2) of the Bankruptcy Code, Article X.A of the Plan provides

*ACTIVE 695212060*

that as of the Effective Date, except as otherwise provided in the Plan, each Debtor will be deemed to have rejected each Executory Contract or Unexpired Lease to which such Debtor is a party, unless such Executory Contract or Unexpired Lease (i) was previously assumed or rejected; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion or notice to reject filed on or before the Confirmation Date; or (iv) is identified for assumption on the Assumption Schedule included in the Plan Supplement. In accordance with the Solicitation Procedures Order and Article X.C of the Plan, and as evidenced by the Cure Notice Affidavit, certain counterparties to the Debtors' Executory Contracts and Unexpired Leases were each served with an individualized Cure Notice, in the form attached to and approved by the Solicitation Procedures Order, which included the proposed cure amounts for each contract thereon. In accordance with Article X.A of the Plan, the Plan Proponent has filed and served, as an exhibit in the Plan Supplement, the Assumption Schedule, which identifies the Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan. The time given to parties in interest to object to the assumption, assumption and assignment, and rejection of their executory contracts or unexpired leases was good and sufficient and no other or further notice is required.

### iii. Exculpation.

30. The exculpation provisions set forth in Article XIII.C of the Plan are essential to the Plan. Among other things, they are narrowly tailored to these Chapter 11 Cases and each of the Exculpated Parties has contributed value to the Estates and aided in the ability to pursue confirmation. Each of the Exculpated Parties has played an integral role in formulating the Combined Disclosure Statement and Plan and has expended significant time and resources analyzing and negotiating the issues presented in these Chapter 11 Cases. The record in these Chapter 11 Cases fully supports the exculpation provisions set forth in Article XIII.C of the Plan.

14

####    iv.    **Injunction.**

31.    The injunction provisions set forth in Article XIII.D of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the exculpation provisions in Article XIII.C of the Plan. Such injunction provisions are appropriately tailored to achieve those purposes.

###    c.    **Section 1123(d) – Cure of Defaults.**

32.    Article X.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code. Any monetary defaults under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the applicable Cure Claim in Cash on the Effective Date, subject to the limitations described in Article X.C of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Any disputed cure amounts will be determined in accordance with the procedures set forth in Article X.C of the Plan and applicable bankruptcy and nonbankruptcy law. As such, the Plan provides that the Wind Down Debtors will cure, or provide adequate assurance that the Wind Down Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

###    d.    **Section 1129(a)(2) – Compliance of the Plan Proponent and Others with the Applicable Provisions of the Bankruptcy Code.**

33.    The Committee, as Plan Proponent, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including, but not

limited to, sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

34.     The Plan Proponent and its agents solicited votes to accept or reject the Plan after the Court approved the adequacy of the Disclosure Statement on an interim basis pursuant to section 1125(a) of the Bankruptcy Code and the Solicitation Procedures Order.

35.     The Plan Proponent and its agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Solicitation Procedures Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, in each case whether domestic or foreign, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article XIII.C of the Plan.

36.     The Plan Proponent and its agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

e.     **Section 1129(a)(3) – Proposal of Plan in Good Faith.**

37.     The Plan Proponent has proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding these Chapter 11 Cases, the Combined Disclosure Statement and Plan, and the process leading to its formulation. The Plan Proponent's

16

good faith is evident from the facts and record in these Chapter 11 Cases, the Combined Disclosure Statement and Plan, the hearing on interim approval of the Disclosure Statement, and the record of the Combined Hearing and other proceedings in these Chapter 11 Cases.

38.    The Plan is the product of good faith, arms'-length negotiations by and among the Committee and the Debtors' key constituents. The Plan itself and the process leading to its formulation provide independent evidence of the Plan Proponent's and such other parties' good faith and assure the fair treatment of holders of Claims or Interests. Consistent with the overriding purposes of chapter 11 of the Bankruptcy Code, the Plan was negotiated and proposed with the intent of accomplishing a controlled liquidation of the Debtors' and their assets and maximizing stakeholder value and for no ulterior purpose. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**f.    Section 1129(a)(4) – Court Approval of Certain Payments as Reasonable.**

39.    Any payment made or to be made by the Debtors, the Wind Down Debtors, or the Liquidating Trust, as applicable, for services or costs and expenses in connection with these Chapter 11 Cases or in connection with the Plan and incident to these Chapter 11 Cases has been approved by, or is subject to the approval of, the Court as reasonable. Accordingly, the Plan satisfies the requirements of section 1129(a)(4).

**g.    Section 1129(a)(5) – Disclosure of Directors and Officers and Consistency with the Interests of Creditors and Public Policy.**

40.    The Plan Proponent has disclosed the identity of the Wind Down Officer and the Liquidating Trustee and has disclosed the members of the Wind Down Advisory Board. Additionally, the Plan Proponent has identified in the Plan Supplement the identity of any employees, including insiders, that will be retained by the Wind Down Debtors after the Effective

17

Date. Accordingly, the Plan Proponent has satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**h.  Section 1129(a)(6) – Rate Changes.**

41.     The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**i.  Section 1129(a)(7) – Best Interests of Holders of Claims and Interests.**

42.     The evidence in support of the Plan that was proffered or adduced at the Combined Hearing, and the facts and circumstances of these Chapter 11 Cases, establish that each Holder of Allowed Claims or Interests in each Class will receive or retain as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. As a result, the Plan Proponent has demonstrated that the Plan is in the best interest of creditors and equity holders and the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.

**j.  Section 1129(a)(8) – Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Voting Classes.**

43.     The Classes that are Unimpaired under the Plan are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. With respect to Classes entitled to vote on the Plan, Class 3 (General Unsecured Claims) and Class 3A (Convenience Claims) are Impaired and have voted to accept the Plan. Finally, with respect to any Class that is deemed to reject the Plan, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to each such Class and thus satisfies section 1129(b) of the Bankruptcy Code

with respect to such Classes as described further below. As a result, the requirements of section 1129(a)(8) of the Bankruptcy Code are satisfied.

**k.  Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

44.     The treatment of Administrative Claims, Professional Fee Claims, and Priority Tax Claims under Article VI of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**l.  Section 1129(a)(10) – Acceptance by at Least One Voting Class.**

45.     As set forth in the Voting Declaration, Classes 3 and 3A voted to accept the Plan, and at least one Voting Class that has accepted the Plan for each Debtor, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code). Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

**m.  Section 1129(a)(11) – Feasibility of the Plan.**

46.     As evidenced by the Newman Declarations, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Plan Proponent at or before the Combined Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and provides for the liquidation of the Debtors; (d) establishes that the Wind Down Debtors and/or the Liquidating Trust will have sufficient funds available to meet their obligations under the Plan – including sufficient amounts of Cash to reasonably ensure payment of Allowed Claims that will receive Cash distributions pursuant to the terms of the Plan; and (e) establishes that the Wind Down Debtors and/or the Liquidating Trust will have the financial wherewithal to pay Claims that accrue, become

payable, or are allowed by Final Order following the Effective Date. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**n.   Section 1129(a)(12) – Payment of Statutory Fees.**

47.     Article VI.D of the Plan provides that all fees due and payable to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code before the Effective Date shall be paid on the Effective Date. Additionally, Article VI.D. of the Plan provides that all such fees arising after the Effective Date shall be paid by the Wind Down Debtors and the Liquidating Trustee, as applicable, in accordance with the terms thereof. Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

**o.   Section 1129(a)(13), (14), (15), and (16) – Retiree Benefits, Domestic Support Obligations, Individuals, and Nonprofit Corporations.**

48.     The Debtors do not provide any retiree benefits or owe any domestic support obligations, are not individuals, and are not nonprofit corporations. Thus, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Plan.

**p.   Section 1129(b) – Confirmation of Plan Over Nonaccepting Classes.**

49.     With respect to the Classes that have not accepted the Plan (the "Non-Accepting Classes"), the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because:  (a) at least one Voting Class voted to accept the Plan; and (b) the Plan does not discriminate unfairly and is fair and equitable with respect to the Non-Accepting Classes. Specifically, the Plan is fair and equitable with respect to each Non-Accepting Class because no Holder of a Claim or Interest that is junior to the Claims and Interests in the Non-Accepting Classes will receive or retain any property on account of such junior Claim or Interest. As a result, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Thus, the Plan may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied. After entry of

20

this Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of Voting Classes that voted to reject the Plan.

### q.  Section 1129(c) – Only One Plan.

50.     Other than the Plan (including previous versions thereof), no other plan has been filed in these Chapter 11 Cases. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

### r.  Section 1129(d) – Principal Purpose of the Plan is Not Avoidance of Taxes or Section 5 of the Securities Act.

51.     No Governmental Unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Plan is not such avoidance. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

### s.  Section 1129(e) – Not Small Business Cases.

52.     These Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to these Chapter 11 Cases.

### t.  Satisfaction of Confirmation Requirements.

53.     Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Combined Hearing, the Plan and the Plan Proponent, as applicable, satisfy all the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

## P.    Good Faith.

54.     The Plan Proponent has proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of stakeholders. The Plan accomplishes this goal. Accordingly, the Plan Proponent has been, is, and will continue

21

acting in good faith by: (a) consummating the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) taking the actions authorized and directed or contemplated by this Confirmation Order or the Plan. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

**Q.      Implementation.**

55.      All documents and agreements necessary to implement transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, have been negotiated in good faith and at arms' length, are in the best interests of the Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. The Plan Proponent, the Wind Down Officer, and the Liquidating Trustee are each authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

56.      Except as otherwise provided in the Plan, the Wind Down Agreement, the Litigation Trust Agreement, or any agreement, instrument, or other document incorporated in or entered into in connection with or pursuant to the Plan, and, for the avoidance of doubt, except for the Litigation Trust Claims and other Litigation Trust Assets, on the Effective Date, all property in each Estate and any property acquired by any of the Wind Down Debtors pursuant to the Plan shall vest in each respective Wind Down Debtor free and clear of all Liens, Claims, charges, or other encumbrances except as set forth in Article XII.L.3 of the Plan. On and after the Effective Date, except as otherwise provided in the Plan, each Wind Down Debtor may use, acquire, or dispose of property without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

*ACTIVE 695212060*

**R.      Treatment of Executory Contracts and Unexpired Leases.**

57.      Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases. The Plan Proponent's determination regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on, and within the sound business judgment of, the Plan Proponent, are necessary to the implementation of the Plan, and are in the best interests of the Debtors' Estates, holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

58.      The Disclosure Statement portion of the Combined Disclosure Statement and Plan is approved on a final basis under section 1125 of the Bankruptcy Code.

59.      The Plan, attached hereto as **Exhibit A**, is approved and confirmed under section 1129 of the Bankruptcy Code.

60.      The Plan Supplement, including the documents contained therein that may be amended through and including the Effective Date in accordance with and as permitted by the Plan, is approved. The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order. If there is a conflict between the terms of the Plan (including any documents in the Plan Supplement) or the Disclosure Statement and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

61.      The terms of the Plan, the Plan Supplement, all exhibits thereto, and this Confirmation Order shall be effective and binding as of the Effective Date on all parties in interest,

including, but not limited to: (a) the Debtors and the Wind Down Debtors; (b) the Committee; (c) the Liquidating Trust; and (d) all other Holders of Claims or Interests.

62.     The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision, it being the intent of the Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**A.      Objections.**

63.     To the extent that any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Combined Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on their merits.

**B.      Findings of Fact and Conclusions of Law.**

64.     The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Combined Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order. To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such. To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Combined Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

*ACTIVE 695212060*

**C.      Notice of the Combined Hearing and Solicitation.**

65.      The Objection Deadline and Hearing Notice (as defined in the Solicitation Procedures Order) complied with the terms of the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law. No further notice of the Combined Hearing was required or need be given.

66.      The solicitation of votes on the Plan complied with the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order, and applicable non-bankruptcy law.

**D.      Incorporation by Reference.**

67.      The terms and provisions of the Plan and the exhibits thereto are incorporated by reference and are an integral part of this Order. The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall, on and after the Effective Date, be binding in all respects upon, and shall inure to the benefit of, the Wind Down Debtors, their Estates and their creditors, and their respective successors and assigns, non-debtor affiliates, any affected third parties, all holders of equity interests in the Debtors, all holders of any Claims, whether known or unknown, against the Debtors' Estates, including, but not limited to all contract counterparties, borrowers, leaseholders, governmental units, and any trustees, examiners, administrators, responsible officers, estate representatives, or similar entities for the Debtors, if any, subsequently appointed in any of these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of these Chapter 11 Cases, and each of their respective affiliates, successors, and assigns.

*ACTIVE 695212060*

**E.      The Exculpation and Injunction.**

68.     Pursuant to Bankruptcy Rule 3020(c)(1), the Exculpation provisions in Article XIII.C of the Plan and the Injunction in Article XIII.D of the Plan are hereby approved and will be effective immediately on the Effective Date without further order or action by the Court or any of the parties to any such exculpation or injunction.

**F.      Preservation of Causes of Action.**

69.     In accordance with section 1123(b)(3) of the Bankruptcy Code, except for Causes of Action against a Person or Entity that are expressly waived, relinquished, exculpated, compromised, or settled pursuant to the Plan or by a Final Order of the Bankruptcy Court, the Liquidating Trust shall have the exclusive right, authority, and standing to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Liquidating Trust Claims, and to decline to do any of the foregoing without the consent or approval of any third party except as otherwise expressly required by the Plan or Liquidating Trust Agreement, or further notice to, or action, order, or approval of, the Bankruptcy Court. No Person may rely on the absence of a specific reference in the Combined Disclosure Statement and Plan or the Plan Supplement to any Cause of Action against it as any indication that the Liquidating Trustee will not pursue any and all available Causes of Action against it. Unless any Liquidating Trust Claim against a Person is expressly waived, relinquished, exculpated, or compromised, or settled under the Plan, the Liquidating Trust expressly reserves all Liquidating Trust Claims for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of, entry of this Confirmation Order or Consummation of the Plan. The Liquidating Trust shall be entitled to enjoy

26

the benefits of section 108(a) of the Bankruptcy Code and shall be deemed to be a trustee (as that term is used in section 108(a)) for purposes of prosecuting the Liquidating Trust Claims.

**G.      Retention of Jurisdiction.**

70.      This Court retains jurisdiction over these Chapter 11 Cases, all matters arising out of or related to these Chapter 11 Cases and the Plan, the matters set forth in Article XVI of the Plan, and any other applicable provisions of the Plan; *provided* that nothing in Article XVI of the Plan shall be deemed to establish jurisdiction of this Court with respect to any matter over which the Court would not otherwise have jurisdiction as of the Effective Date.

**H.      Effectiveness of All Actions.**

71.      Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan and this Confirmation Order shall be effective on, before, or after the Effective Date pursuant to this Confirmation Order, without further application to or order of the Court, or any further action by the Wind Down Debtors, the Wind Down Officer, the Liquidating Trust, or the Liquidating Trustee.

**I.      Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.**

72.      This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules (whether domestic or foreign), and regulations of all states, provinces, countries, and any other governmental authority (whether domestic or foreign) with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, including the Plan Modifications, and any other acts and transactions referred to in or contemplated by the Combined Disclosure Statement and Plan, the Plan Supplement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**J.      Plan Implementation Authorization**

73.     The form of the Wind Down Agreement and the Liquidating Trust Agreement in the Plan Supplement are each hereby approved in their entirety, and the Wind Down Officer is authorized to execute the Wind Down Agreement and the Liquidating Trust Agreement on behalf of each of the Debtors and to execute any further documents and take any action necessary or appropriate to implement, effectuate, or consummate the Wind Down Agreement, subject to the terms thereof.

74.     The Wind Down Officer, on behalf of the Wind Down Debtors, and the Liquidating Trustee, on behalf of the Liquidating Trust, and their respective agents, advisors, and professionals are authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document related to the Plan, as the same may be modified, amended and supplemented, and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Court. To the extent applicable, any or all such documents shall be accepted upon presentment by each of the respective filing offices and recorded in accordance with applicable law and shall become effective in accordance with their terms and the provisions of applicable law. No action of the Debtors' boards of directors shall be required to authorize the Wind Down Debtors to enter into, execute and deliver, adopt or amend, as the case may be, any such contract, instrument, release, or other agreement or document related to the Plan, and following the Effective Date, each of the Plan documents will be a legal, valid, and binding obligation of the Wind Down Debtors, enforceable against the Wind Down Debtors in accordance with the respective terms thereof. Notwithstanding the foregoing, the officers and directors of the Debtors are authorized

28

and directed to execute and deliver any document that may be required under applicable law, as the Wind Down Officer may reasonably request, in order to effectuate and carry out the transactions contemplated under the Plan.

75.     Without limiting the generality of the foregoing, and subject to, and without altering, the terms of the Vesttoo Bay XIV Settlement, the Vesttoo Bay XIX Settlement, and the Vesttoo Bay XXIV Settlement approved herein, the Debtors, and to the extent applicable, the Wind Down Officer and the Liquidating Trustee, are authorized and directed to use commercially reasonable best efforts to move all Cash, with the exception of certain funds, in an amount to be agreed upon between the Debtors and the Committee prior to any such transfer, to be retained in Israel for the payment of local wages and expenses (the "Account Transfers"), held in each account owned or controlled by each Debtor outside the United States (each, a "Non-U.S. Account" and collectively, the "Non-U.S. Accounts") to segregated bank accounts in the United States in the same name of each respective Debtor (each, a "U.S. Account" and collectively, the "U.S. Accounts"); *provided*, for the avoidance of doubt, each U.S. Account shall be in the same name as the respective Non-U.S. Account such that each Debtor maintains the same interest in the U.S. Account that it had in the Non-U.S. Account, and the funds from such Non-U.S. Accounts shall not be commingled in the U.S. Accounts in connection with the Account Transfers. For the avoidance of doubt, nothing in this paragraph 75 shall authorize or direct the Debtors, the Wind Down Officer, or the Liquidating Trustee to move Cash or take any other action that is inconsistent with the terms of the Vesttoo Bay XIV Settlement, the Vesttoo Bay XIX Settlement, or the Vesttoo Bay XXIV Settlement.

**K.     Wind Down Officer as Sole Designated Representative**

76.     On and after the Effective Date, the Wind Down Officer shall be the sole representative of each of the Wind Down Debtors for all purposes and shall succeed to such powers

29

as would have been applicable to the Debtors' officers, directors, and shareholders. The Wind Down Officer shall be the designated representative of the Wind Down Debtors for all purposes and shall be the foreign representative for each of the Wind Down Debtors in any foreign proceedings, whether such proceedings are pending on the Effective Date or commenced after the Effective Date, including, but not limited to, (i) the proceedings commenced by certain Debtors in the Tel Aviv-Jaffa Court in Israel, Ins. Pr. 36313-08-23, and any similar proceedings commenced by any Debtor in Israel (collectively, the "Israeli Proceedings"), and (ii) proceeding pending in the Bermuda Court styled *In the Matter of White Rock Insurance (SAC) Limited*, Case No. 2023-261 (the "Bermuda Proceeding"). The Wind Down Officer shall be authorized and shall have the power to act in any way permitted by applicable foreign law, including, but not limited to:  (a) seeking recognition of these Chapter 11 Cases, including recognition and enforcement of the Plan and this Confirmation Order or any terms thereof, in any foreign proceedings, including the Israeli Proceedings and Bermuda Proceeding, (b) requesting that the applicable Israeli court, Bermuda Court, or other court of competent jurisdiction, lend assistance to this Court in protecting the property of the Wind Down Debtors' Estates or the Liquidating Trust Assets, and (c) seeking any other appropriate relief from the Israeli courts, Bermuda Court, or other court of competent jurisdiction, that the Wind Down Officer deems just and proper in the furtherance of the protection of any one or more of the Wind Down Debtors' Estates or the Liquidating Trust.

77.    This Court requests the aid and assistance of the Israeli courts, or other courts of competent jurisdiction, to recognize the Plan and the Wind Down Officer as a foreign officer under the Insolvency and Financial Rehabilitation Law 5778–2018, and to recognize and give full force and effect in all administrative districts of Israel to this Confirmation Order.

*ACTIVE 695212060*

78.     Subject to the approval and consent of the Wind Down Advisory Board, the Wind Down Officer shall be authorized to commence and prosecute any ancillary proceedings as the Wind Down Officer deems necessary or appropriate to effectuate the Wind Down and otherwise implement and effectuate the Plan.

79.     As contemplated by paragraphs 76 and 77 of this Confirmation Order, the Debtors and the Committee shall file a joint application for approval, recognition, or enforcement of the Plan and Confirmation Order in the Israeli Proceeding as promptly as possible after the entry of this Confirmation Order. The Debtors and the Committee shall cooperate in presenting this application for approval, recognition, or enforcement; including requesting approval of the Account Transfers ordered in paragraph 75.  The Committee, the Debtors, the Wind Down Officer, and the Liquidating Trustee, as applicable, shall cooperate in pursuing any relief in any other foreign jurisdictions or proceedings, whether or not pending as of the date of this Confirmation Order or subsequently commenced, including, but not limited to, the Bermuda Proceeding, that is necessary and appropriate to effectuate the Wind Down and otherwise implement and effectuate the Plan, including, but not limited to, recognition of these Chapter 11 Cases and/or enforcement of any terms of the Plan or this Confirmation Order, including the Account Transfers ordered in paragraph 75 above.  In connection with presenting an application for approval, recognition, or enforcement in the Israel Proceeding, any party in interest in these cases may participate as permitted by Israeli law and procedure irrespective of any language (including injunctive provisions) of the Plan or Confirmation Order and neither the Debtors nor the Committee shall object to participation by any party in interest for reasons other than those available under Israeli law and procedure.  For the avoidance of doubt, nothing in this paragraph 79 is intended to, nor

31

shall be deemed to, be an admission by the Debtors, the Committee, the Wind Down Officer, or the Liquidating Trustee regarding the application of Israeli law.

**L.     Liquidating Trust.**

80.     On the Effective Date, the Debtors shall transfer and/or assign and shall be deemed to transfer and/or assign to the Liquidating Trust all of the Debtors' rights, title and interest in and to all of the Initial Liquidating Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Initial Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Liens, Claims, charges, encumbrances, and other interests, subject only to the Liquidating Trust Interests and except as set forth in Article XII.L.3 of the Plan. The transfer of the Liquidating Trust Assets to the Liquidating Trust, whether on or after the Effective Date, shall not diminish, and fully preserves, any defenses that the Liquidating Trust has with respect to the Liquidating Trust Assets.

81.     In connection with the transfer of the Liquidating Trust Assets, any attorney-client privilege, work-product privilege, or other privilege of immunity of any Debtor attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trust and its representatives. The Debtors, the Wind Down Officer, and the Liquidating Trustee are directed to take all necessary actions to effectuate the transfer of such privileges. Notwithstanding the foregoing, or anything in the Plan, this Confirmation Order, the Liquidating Trust Agreement or any other document, nothing herein shall be deemed to constitute a waiver of any privilege or any shared, joint, or common interest privilege or immunity held by the Debtors or any other person.

82.     Notwithstanding any provision of state law to the contrary, the Liquidating Trust shall be administered under and in accordance with the laws of the state of Delaware.

32

**M.    Binding Effect.**

83.    On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, and injunctions described in the Plan, each Entity acquiring property under the Plan, this Confirmation Order, or the Liquidating Trust, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim has voted on the Plan.

84.    Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Wind Down Debtors, their Estates, and their respective successors and assigns.

**N.    Continued Corporate Existence**

85.    Except as otherwise provided in the Plan, the Liquidating Trust Agreement, the Wind Down Agreement, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with its assets and liabilities on a non-consolidated basis (except to the extent subsequently modified after notice and hearing as set forth in Article I.F of the Plan and herein), and with all the

33

powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

**O.    Release of Liens**

86.    Except as otherwise provided in the Combined Disclosure Statement and Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Combined Disclosure Statement and Plan, on the Effective Date, all Liens against the property of any Estates will be fully released, and all of the right, title and interest of any holder of such Liens, including any rights to any collateral thereunder, shall attach to and be enforceable solely against any net proceeds of sales or other liquidation of such assets. For the avoidance of doubt, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

**P.    Injunctions and Automatic Stay.**

87.    Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until

*ACTIVE 695212060*

the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**Q.    Cancellation of Existing Securities and Agreements**

88.    Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date:  (a) any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be cancelled and deemed surrendered as to the Debtors and shall not have any continuing obligations; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be deemed released and discharged; *provided*, that notwithstanding entry of the Confirmation Order or Consummation, any such instrument or document that governs the rights of a Holder of a Claim or Interest shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan. Notwithstanding the foregoing, the Plan does not, and shall not be deemed to, provide for the substantive consolidation of any of the Debtors absent further order of the Court upon notice and a hearing, and all parties' rights with respect thereto are preserved.

R.      **Compliance with Tax Requirements.**

89.     Each Holder of an Allowed Claim or Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. In connection with the Plan, to the extent applicable, the Debtors, the Wind Down Debtors, the Liquidating Trustee, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. The Debtors, the Wind Down Debtors, the Liquidating Trustee, and any applicable withholding agent, as applicable, are authorized to take all actions necessary or appropriate to comply with applicable withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Wind Down Debtors and the Liquidating Trustee shall have the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

S.      **Section 1146 Exemption.**

90.     Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto, including the transfer of the Liquidating Trust Assets to the Liquidating Trust, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such

36

tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**T.     Professional Compensation and Reimbursement Claims.**

91.     Except as otherwise specifically provided in the Plan, the Wind Down Agreement, the Liquidating Trust Agreement, and prior orders of the Court, from and after the Effective Date, the Wind Down Debtors and the Liquidating Trust shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable legal, professional, or other fees and expenses incurred by the Wind Down Debtors and the Liquidating Trust. In addition, the Wind Down Debtors and the Liquidating Trust are authorized to pay any and all professional fees as contemplated by and in accordance with the Plan.

92.     All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Effective Date shall be filed no later than 45 days after the Effective Date.

**U.     Supplemental Administrative Claims Bar Date.**

93.     Except as otherwise provided in Articles VI.A and VI.B of the Plan, and except with respect to Administrative Claims that are 503(b)(9) Claims, Interim Administrative Claims, Professional Fee Claims, or Intercompany Claims, Holders of Administrative Claims are required to file requests for payment of Administrative Claims no later than the Supplemental Administrative Claims Bar Date, which is 30 days after the Effective Date. Holders of such Administrative Claims that are required to, but do not, file and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Estates, the Wind Down Debtors, the Liquidating Trust, or their respective property. Objections to any such requests for payment of Administrative Claims

37

must be filed and served on the requesting party and the Liquidating Trustee by the Claims Objection Bar Date.

## V.    Contribution Election.

94.    The Election Form for Contributing Creditors filed with the Plan Supplement is hereby approved. Each Holder of a Class 3 General Unsecured Claim shall have the right to contribute and assign such Holder's Non-Estate Causes of Action to the Liquidating Trust by submitting a duly executed Election Form for Contributing Creditors so that such Election Form for Contributing Creditors is actually received by the Balloting Agent on or prior to the Contribution Election Deadline, which is 30 days after the Effective Date; *provided*, *however*, the Liquidating Trustee shall have the discretion, but shall not be required, to accept the contribution and assignment of Non-Estate Causes of Action after the Contribution Election Deadline.

## W.    Nonseverability of Plan Provisions upon Confirmation.

95.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, the terms and conditions of this Confirmation Order shall be effective and enforceable immediately upon its entry. Each term and provision of the Plan, and the transactions related thereto, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified except as provided by the Plan or this Confirmation Order; and (c) nonseverable and mutually dependent.

## X.    Waiver or Estoppel.

96.    Each holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Court before the Confirmation Date.

38

**Y.      Authorization to Consummate.**

97.      The Plan Proponent is authorized, and the Debtors are directed, to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article XIV of the Plan. The substantial consummation of the Plan, within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code, is deemed to occur on the first date, on or after the Effective Date, on which distributions are made in accordance with the terms of the Plan to holders of any Allowed Claims or Interests (as applicable).

**Z.      Treatment of Executory Contracts.**

98.      The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article X of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

99.      Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor will be deemed to have rejected each Executory Contract or Unexpired Lease to which such Debtor is a party, unless such Executory Contract or Unexpired Lease (i) was previously assumed or rejected; (ii) was previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion or notice to reject filed on or before the Confirmation Date; or (iv) is identified for assumption on the Assumption Schedule included in the Plan Supplement.

100.    The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions and rejections described above as of the Effective Date. Unless otherwise indicated, all assumptions and

rejections of Executory Contracts and Unexpired Leases in the Plan will be effective as of the Effective Date. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order shall vest in and be fully enforceable by the applicable Wind Down Debtor in accordance with its terms, except as such terms may have been modified by Bankruptcy Court order.

101.    Notwithstanding the foregoing paragraph or anything contrary herein, the Plan Proponent reserves the right to alter, amend, modify, or supplement the Executory Contracts and Unexpired Leases identified for assumption in the Plan Supplement prior to the Effective Date.

     **a.**     **Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

102.    Any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise must be filed as set forth in the Bar Date Order.

103.    Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not filed within such time, unless otherwise ordered by the Bankruptcy Court, will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Wind Down Debtors, their Estates, the Liquidating Trust, or property of the foregoing parties, without the need for any objection by the Wind Down Debtors or Liquidating Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article VII of the Plan.

*ACTIVE 695212060*

**b.  Cure of Defaults**

104.    Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected on the Cure Notice or as otherwise agreed or determined by a Final Order of the Bankruptcy Court, in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any Cure Claim (2) the ability of the Wind Down Debtors to provide "adequate assurance of future performance" (with the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Claims shall be paid following the entry of a Final Order resolving the dispute and approving the assumption. To the extent the Bankruptcy Court determines that the amount of a Cure Claim for an Executory Contract or Unexpired Lease is greater than the amount reflected on the Cure Notice related to such Cure Claim, the Plan Proponent shall have the right to provides that such Executory Contract or Unexpired Lease shall be rejected and, in such an instance, shall not be required to pay the Cure Claim; *provided* that the Plan Proponent or Wind Down Debtors shall serve a notice of rejection on the non-Debtor counterparty and such non-Debtor counterparty shall have 30 days from service of such notice to file a proof of claim for rejection damages.

105.    Any counterparty to an Executory Contract or Unexpired Lease that failed to object timely to the proposed assumption, assumption and assignment, or Cure Notice shall be deemed to have assented to such assumption or assumption and assignment, and Cure amount.

106.    Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Claim, shall result in the full

41

release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Wind Down Debtors assume or assume and assign such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

### c. Insurance Policies

107.    All of the Debtors' Insurance Policies shall not be considered or treated as Executory Contracts. All Insurance Policies shall remain in full force and effect following the Effective Date subject to the right of the Wind Down Officer to terminate such Insurance Policies.

### d. Nonoccurrence of Effective Date.

108.    If the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting any Executory Contract or Unexpired Lease pursuant to section 365(d)(4) of the Bankruptcy Code.

## AA.    Approval of Plan Settlements

### a. Vesttoo Bay XIV Settlement

109.    The Vesttoo Bay XIV Settlement is approved pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code. Within two business days of this Order, the Debtors shall transfer funds from Vesttoo Ltd. to Vesttoo Bay XIV in an amount necessary to increase the amount of cash funds available in accounts at Vesttoo Bay XIV so that immediately following such transfer, the cash funds available in accounts at Vesttoo Bay XIV are equal to the amount on deposit at Vesttoo Bay XIV on the Petition Date, which aggregate cash balance shall be no less than $10,166,882.66 (the "Vesttoo Bay XIV Ordered Transfer").

42

110.    The Vesttoo Bay XIV Cash shall remain segregated and shall not be used or accessed by the Estates until the earlier of (i) the Effective Date and (ii) April 30, 2024 (the "Vesttoo Bay XIV Outside Date"). If the Vesttoo Bay XIV Outside Date occurs before the Effective Date, (a) use of the Vesttoo Bay XIV Cash shall be subject to no less than 14-days' notice and a hearing before the Bankruptcy Court with an opportunity for objection (the "Vesttoo Bay XIV Surviving Obligation") and (b) unless the Parties agree otherwise, the terms of the Vesttoo Bay XIV Settlement shall terminate other than the Vesttoo Bay XIV Surviving Obligation.

111.    Following the Vesttoo Bay XIV Ordered Transfer, the Vesttoo Bay XIV Disputed Transfers shall be deemed to have been made from Vesttoo Ltd. and not Vesttoo Bay XIV, and the Vesttoo Bay XIV Ordered Transfer from Vesttoo Ltd. to Vesttoo Bay XIV shall be irrevocable and binding on all parties in interest, including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors. The term "Vesttoo Bay XIV Disputed Transfers" shall mean the Debtors' payment of fees and expenses of professionals in these Chapter 11 Cases from the Vesttoo Bay XIV Cash.

112.    The Committee and the Debtors are authorized to take all actions necessary or appropriate to carry out the terms of the Vesttoo Bay XIV Settlement. Without limiting the generality of the foregoing, the Debtors are authorized and directed to move all cash held in an account or accounts owned or controlled by Vesttoo Bay XIV at Israel Discount Bank to a segregated bank account in the United States in the name of Vesttoo Bay XIV as soon as practical and to use commercially reasonable efforts to do so by February 29, 2024; *provided*, *however*, to the extent that the Debtors' bank(s) refuses or otherwise delays the transfer of such Cash to the United States and the Debtors have used and continue to use commercially reasonable best efforts to transfer such Cash, the Debtors shall not be held in contempt for their inability to complete the

43

transfer of cash required by the prior sentence of this paragraph. The Committee shall use commercially reasonable efforts to have the Debtors provide Clear Blue with a presentation on the mechanics and logistics of moving the Vesttoo Bay XIV Cash from the Vesttoo Bay Israel Discount Bank account to a segregated bank account in the United States in the name of Vesttoo Bay XIV.

113.    On the Effective Date, the Debtors shall distribute to Clear Blue or its designee the Vesttoo Bay XIV Distribution Amount in settlement of Clear Blue's asserted Constructive Trust Claim over the Vesttoo Bay XIV Cash, and in partial satisfaction of Clear Blue's Claims against Vesttoo Bay XIV Cash. Clear Blue waives all rights, claims, and interests in or against the Vesttoo Bay XIV Contribution Amount, and the Vesttoo Bay XIV Contribution Amount shall constitute Initial Liquidating Trust Assets and may be used for all purposes consistent with the Plan.

114.    The Vesttoo Bay XIV Settlement shall be binding upon and enforceable against the parties thereto and any person or entity asserting any rights on behalf of any such parties; *provided* that the White Rock JPLs' consent to the Vesttoo Bay XIV Settlement is subject to entry of the Committee/JPL Settlement Bermuda Court Order and such Order not being stayed or vacated prior to the Effective Date.

**b.  Vesttoo Bay XIX Settlement[3]**

115.    The Vesttoo Bay XIX Settlement is approved pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code. Within two business days of this Order, the Debtors shall transfer funds from Vesttoo Ltd. to Vesttoo Bay XIX in an amount necessary to increase the amount of cash funds available in accounts at Vesttoo Bay XIX so that immediately

---

[3]  [The terms of the proposed Confirmation Order approving and setting forth the Vesttoo Bay XIX Settlement are subject to ongoing discussions among the parties]

following such transfer, the cash funds available in accounts at Vesttoo Bay XIX are equal to the Vesttoo Bay XIX Cash, which aggregate cash balance shall be no less than $3,849,795.24 (the "Vesttoo Bay XIX Ordered Transfer", and such cash balance after the Vesttoo Bay XIX Ordered Transfer, the "Restored Vesttoo Bay XIX Cash").

116.    The Restored Vesttoo Bay XIX Cash shall remain segregated and shall not be used or accessed by the Estates until the earlier of (i) the Effective Date and (ii) April 30, 2024 (the "Vesttoo Bay XIX Outside Date"). If the Vesttoo Bay XIX Outside Date occurs before the Effective Date, (a) the Estates' use of the Restored Vesttoo Bay XIX Cash shall be limited to 50% of the Restored Vesttoo Bay XIX Cash and shall be subject to no less than 14 days' notice and a hearing before the Bankruptcy Court with an opportunity for objection (the "Vesttoo Bay XIX Surviving Obligation") and (b) unless the Parties agree otherwise, the terms of the Vesttoo Bay XIX Settlement shall terminate other than the Vesttoo Bay XIX Surviving Obligation.

117.    Following the Vesttoo Bay XIX Ordered Transfer, the Vesttoo Bay XIX Disputed Transfers shall be deemed to have been made from Vesttoo Ltd. and not Vesttoo Bay XIX, and the Vesttoo Bay XIX Ordered Transfer from Vesttoo Ltd. to Vesttoo Bay XIX shall be irrevocable and binding on all parties in interest, including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors. The term "Vesttoo Bay XIX Disputed Transfers" shall mean the Debtors' payment of fees and expenses of professionals in these Chapter 11 Cases from the Vesttoo Bay XIX Cash.

118.    On the later of (a) the Effective Date and (b) a resolution or determination regarding the Vesttoo Bay XIX Cedents' respective rights (vis-à-vis each other) to the Vesttoo Bay XIX Distribution Amount, each Vesttoo Bay XIX Cedent or its respective designee(s) shall each receive, in settlement of the Vesttoo Bay XIX Cedents' asserted Constructive Trust Claim over

45

the Restored Vesttoo Bay XIX Cash, and in partial satisfaction of the Vesttoo Bay XIX Cedents' Claims against Restored Vesttoo Bay XIX Cash, their respective share of the Vesttoo Bay XIX Distribution Amount as the Vesttoo Bay XIX Cedents have agreed among themselves or as has been ordered by a final order of a court of competent jurisdiction. The Vesttoo Bay XIX Cedents waive all rights, claims, and interests in or against the Vesttoo Bay XIX Contribution Amount, and the Vesttoo Bay XIX Contribution Amount shall constitute Initial Liquidating Trust Assets and may be used for all purposes consistent with the Plan.

119.    The Committee and the Debtors are authorized to take all actions necessary or appropriate to carry out the terms of the Vesttoo Bay XIX Settlement. Without limiting the generality of the foregoing, the Debtors are authorized and directed to move the full amount of the Restored Vesttoo Bay XIX Cash held in an account or accounts owned or controlled by Vesttoo Bay XIX at Israel Discount Bank to a segregated bank account in the United States in the name of Vesttoo Bay XIX as soon as practical after entry of this Confirmation Order and to use commercially reasonable efforts to do so by February 29, 2024, and, subject to the occurrence of the Effective Date, 50% of the Restored Vesttoo Bay XIX Cash shall be held by Vesttoo Bay XIX for the sole benefit of the Vesttoo Bay XIX Cedents, as their interests shall be determined; *provided*, *however*, to the extent that the Debtors' bank(s) refuses or otherwise delays the transfer of such Cash to the United States and the Debtors have used and continue to use commercially reasonable best efforts to transfer such Cash, the Debtors shall not be held in contempt for their inability to complete the transfer of cash required by the prior sentence of this paragraph. The Committee shall use commercially reasonable efforts to have the Debtors provide the Vesttoo Bay XIX Cedents with a presentation on the mechanics and logistics of moving the full amount of the

Restored Vesttoo Bay XIX Cash from the Vesttoo Bay Israel Discount Bank account to a segregated bank account in the United States in the name of Vesttoo Bay XIX.

120.     The Vesttoo Bay XIX Settlement shall be binding upon and enforceable against the parties thereto and any person or entity asserting any rights on behalf of any such parties.

### c. Vesttoo Bay XXIV Settlement

121.   The Chaucer/White Rock JPLs Settlement is approved pursuant to Bankruptcy Rule 9019 and section 1123(b) of the Bankruptcy Code.  The Vesttoo Bay XXIV Settlement is approved pursuant to Bankruptcy Rule 9019 and sections 363(b), 363(f), 363(m), 1123(b), and 1141(c) of the Bankruptcy Code; *provided*, *however*, that the Vesttoo Bay XXIV Settlement shall not be deemed effective until (subject to the additional provisos in this paragraph 121) an order has been filed by the Supreme Court of Bermuda (the "Bermuda Court") approving the White Rock JPLs' consent to the Vesttoo Bay XXIV Settlement in its entirety, whether alone or together with the Bermuda Court's approval of the White Rock JPLs' consent to confirmation of the Plan (the "Chaucer Bermuda Approval Order"); *provided*, *further*, *however*, that, notwithstanding such delayed effectiveness, paragraphs 121 through 128 shall be effective immediately upon entry of this Confirmation Order to the extent not inconsistent with the Chaucer/White Rock JPLs Settlement; *provided*, *further*, *however*, that, if for any reason the Chaucer Bermuda Approval Order has not been filed within 30 days after entry of this Confirmation Order, Chaucer and the Committee will request that this Court rule on whether the approval of the Bermuda Court is legally required in order for this Court to approve the Vesttoo Bay XXIV Settlement, in which case (x) if this Court rules that such approval of the Bermuda Court is not legally required (any such ruling, a "Chaucer Delaware Approval" and, the date of such ruling, the "Chaucer Delaware Approval Date"), then (for the avoidance of doubt, over the White Rock JPLs' objection and without the White Rock JPLs' consent) the Vesttoo Bay XXIV Settlement shall immediately become effective

in full, or (y) if the Bankruptcy Court rules that such approval of the Bermuda Court is legally required (any such ruling, a "Chaucer Denial" and, the date of such ruling, the "Chaucer Denial Date"), then, notwithstanding anything herein or in the Plan to the contrary, (i) the Vesttoo Bay XXIV Settlement shall be deemed not to have been approved, (ii) the Effective Date shall not occur, (iii) as set forth in paragraph 149 of this Confirmation Order, the Plan shall be null and void in all respects, (iv) any provision of this Confirmation Order that prejudices the rights of Chaucer (including, but not limited to, any provision of this Confirmation Order approving the Plan or Disclosure Statement or making any factual findings with respect to the Plan or Disclosure Statement) shall be void and of no further force or effect, (v) the Conditions (as defined in the Vesttoo Bay XXIV Settlement) shall be deemed not to have been satisfied, and (vi) the Committee, Chaucer and the Bay XXIV 3018 Parties (as defined in the Vesttoo Bay XXIV Settlement) shall be bound by the adjournments, filing extensions and extension of the Chaucer TRO (as defined below) contemplated by subparagraphs 8.a. and 8.b. of the Vesttoo Bay XXIV Settlement (provided that, for such purpose, the phrase "February 17, 2024 through February 22, 2024" shall be deemed replaced with the phrase "February 17, 2024 through the Chaucer Denial Date"). To the extent of any conflict between paragraphs 121–128 of this Confirmation Order and the Chaucer/White Rock JPLs Settlement, the Chaucer/White Rock JPLs Settlement controls.

122.    Subject to the limitations provided in the Chaucer/White Rock JPLs Settlement, on the earlier of (a) the Effective Date and (b) the date that is 30 days after entry of this Confirmation Order so long as this Confirmation Order has not been vacated or stayed at such time (unless, in accordance with paragraph 121, the Chaucer Bermuda Approval Order has not been filed as of such date, in which case the date provided in this clause (b) shall be deemed extended to the date five days immediately following the earlier of the filing of the Chaucer Bermuda Approval Order

ACTIVE 695212060

or the Chaucer Delaware Approval Date), Chaucer or its designee shall receive (and Vesttoo Bay XXIV shall pay or cause to be paid to Chaucer or its designee), by wire transfer of immediately available funds and free and clear of all liens, claims, encumbrances, or other interests of any kind or nature whatsoever (including, but not limited to, any lien, claim, encumbrance or other interest of the White Rock JPLs, the Chaucer Cell or any other Segregated Account of any kind or nature whatsoever and any transfer, conveyance or similar tax) pursuant to sections 363(f) and 1141(c) of the Bankruptcy Code, the Vesttoo Bay XXIV Distribution Amount, in full and final settlement of Chaucer's asserted constructive trust over the Vesttoo Bay XXIV Cash and any other assets of the Debtors; *provided* that no additional funds shall be transferred to, deposited into, or transferred out of any account of, Vesttoo Bay XXIV prior to the date the Vesttoo Bay XXIV Distribution amount is paid to Chaucer. Payment of the Vesttoo Bay XXIV Distribution Amount to Chaucer shall be a condition precedent to the Effective Date of the Plan, and, notwithstanding anything herein or in the Plan to the contrary, such condition precedent shall not be waived without Chaucer's prior written consent. Notwithstanding anything herein or in the Plan to the contrary and for the avoidance of doubt, absent a Chaucer Denial, neither the failure of the Effective Date to occur for any reason, the abandonment of the Plan at any time following entry of the Confirmation Order or any other event that causes the Plan to be null and void nor the subsequent conversion or dismissal of the Chapter 11 Cases shall avoid or otherwise negatively impact (following the filing of the Chaucer Bermuda Approval Order or a Chaucer Delaware Approval) (A) the right of Chaucer to receive the Vesttoo Bay XXIV Distribution or the obligation of Vesttoo Bay XXIV to make such payment in accordance with this Confirmation Order and/or (B) the right of Vesttoo Bay XXIV and its Estate to retain the Vesttoo Bay XXIV Contribution Amount.

*ACTIVE 695212060*

123.    Effective upon Chaucer's receipt of the Vesttoo Bay XXIV Distribution Amount, Chaucer and its affiliated entities waive any rights to distributions or other payments from the Wind Down Debtors or the Liquidating Trust, including, but not limited to, all right, claim, or interest in or against the Vesttoo Bay XXIV Contribution Amount; *provided*, *however*, that, notwithstanding anything herein or in the Plan to the contrary, (a) neither Chaucer nor any of its affiliated entities waive any claim against or other right with respect to the Chaucer Cell or any property of the Chaucer Cell and (b) except for the distribution rights or other rights to payment from the Liquidating Trust expressly waived by Chaucer and its affiliated entities pursuant to this paragraph 123, neither Chaucer nor any of its affiliated entities is waiving any right, Claim, Cause of Action or other claim or defense against or with respect to any Debtor, any Wind Down Debtor, any Estate, or the Liquidating Trust, including for set-off, offset and any other purposes in connection with any Estate Cause of Action asserted against Chaucer or any of its affiliated entities; *provided*, *further*, that any Claim, Cause of Action, or other claim or defense retained by Chaucer herein with respect to the Debtors, the Wind Down Debtors, the Estates and the Liquidating Trust shall be for defensive purposes only and shall not be asserted or relied upon by Chaucer or any of its affiliated entities to obtain a distribution or payment from the Wind Down Debtors or the Liquidating Trust; *provided*, *further*, that, notwithstanding anything herein or in the Plan to the contrary and for the avoidance of doubt, Chaucer and its affiliated entities are retaining, and neither the Plan nor this Confirmation Order shall limit or adversely impact, any right, Claim, Cause of Action or other claim or defense against or with respect to any Person, organization or other entity other than (x) to the extent expressly set forth in this paragraph 123, the Debtors, the Wind Down Debtors, the Estates and the Liquidating Trust, (y) to the extent expressly provided in

the Chaucer/White Rock JPLs Settlement, and (z) to the extent of any exculpations provided in the Plan.

124.    The assets of the Chaucer Cell are not property of any Debtor's Estate, the Wind Down Debtors, or the Liquidating Trust; *provided*, for the avoidance of doubt, Vesttoo Bay XXIV retains its contractual shareholder or similar equity interest in the Chaucer Cell (which shall not include any direct interest in the funds held by the Chaucer Cell), which interest is property of the Estate and shall vest in the Wind Down Debtors on the Effective Date.

125.    The terms of the *Order Granting Chaucer's Motion for a Temporary Restraining Order, Scheduling a Hearing for a Preliminary Injunction and Approving Briefing Schedule With Respect to Preliminary Injunction* [Adv. No. 24-50010, Docket No. 11] (the "Chaucer TRO") shall, and hereby are, extended until Chaucer receives the Vesttoo Bay XXIV Distribution Amount. Upon Chaucer's receipt of the Vesttoo Bay XXIV Distribution Amount, (a) the Chaucer TRO shall be vacated and of no force and effect with respect to any remaining Vesttoo Bay XXIV Cash, including, but not limited to, the Vesttoo Bay XXIV Contribution Amount, and (b) Adversary Proceeding No. 24-50010 commenced by Chaucer shall be dismissed with prejudice with respect to the Debtors, and without prejudice with respect to the other defendants named therein, and Chaucer shall take all actions necessary to effectuate such dismissal.

126.    The Committee and the Debtors are authorized to take all actions necessary or appropriate to carry out the terms of the Vesttoo Bay XXIV Settlement, subject, as applicable, to the filing of the Chaucer Bermuda Approval Order or a Chaucer Delaware Approval. Without limiting the generality of the foregoing, the Debtors are authorized and directed to move the full amount of the Vesttoo Bay XXIV Cash held in an account or accounts owned or controlled by Vesttoo Bay XXIV at Israel Discount Bank to a segregated bank account in the United States in

the name of Vesttoo Bay XXIV as soon as practical and to use commercially reasonable efforts to do so by February 29, 2024; *provided*, *however*, to the extent that the Debtors' bank(s) refuses or otherwise delays the transfer of such Cash to the United States and the Debtors have used and continue to use commercially reasonable best efforts to transfer such Cash, the Debtors shall not be held in contempt for their inability to complete the transfer of cash required by the prior sentence of this paragraph. The Committee shall use commercially reasonable efforts to have the Debtors provide Chaucer with a presentation on the mechanics and logistics of moving the full amount of the Vesttoo Bay XXIV Cash from the Vesttoo Bay Israel Discount Bank account to a segregated bank account in the United States in the name of Vesttoo Bay XXIV.

127.     Subject, as applicable, to the filing of the Chaucer Bermuda Approval Order or a Chaucer Delaware Approval, the Vesttoo Bay XXIV Settlement shall be binding upon and enforceable against the parties thereto and any person or entity asserting any rights on behalf of any such parties.  Notwithstanding anything herein or in the Plan to the contrary, the Plan may not be amended, modified or supplemented in any manner that could in any respect have any direct or indirect adverse impact on Chaucer or any of its affiliated entities without Chaucer's prior written consent.

128.     Neither the Debtors, the Committee nor Chaucer have engaged in any conduct that would cause or permit the Vesttoo Bay XXIV Settlement to be avoided under section 363(n) of the Bankruptcy Code, and Chaucer has acted in good faith in support of the Vesttoo Bay XXIV Settlement and the confirmation of the Plan in accordance therewith.  Chaucer is consummating the Vesttoo Bay XXIV Settlement in good faith and is a good faith buyer within the meaning of, and is entitled to the protections afforded by, section 363(m) of the Bankruptcy Code. Accordingly, subject (as applicable) to the filing of the Chaucer Bermuda Approval Order or a

Chaucer Delaware Approval, the reversal or modification on appeal of this Confirmation Order authorizing and approving, among other things, the Vesttoo Bay XXIV Settlement shall not affect the validity of the Vesttoo Bay XXIV Settlement authorized and approved hereby (including the payment of the Vesttoo Bay XXIV Distribution to Chaucer or Vesttoo Bay XXIV's retention of the Vesttoo Bay XXIV Contribution Amount), whether or not Chaucer knew of the pendency of the appeal, unless this Confirmation Order and the transactions contemplated by the Vesttoo Bay XXIV Settlement and Plan were stayed pending appeal.

**d.  The Committee/JPL Settlement**

129.    The Committee/JPL Settlement is approved pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code.  Capitalized terms used in paragraphs 129–146 of this Confirmation Order, but not otherwise defined in the Plan or this Confirmation Order, shall have the meanings ascribed to such terms in Exhibit E to the Plan. To the extent any terms of the Confirmation Order or Plan are inconsistent with the Committee/JPL Settlement Term Sheet, the Committee/JPL Settlement Term Sheet shall control.

130.    As of filing of the Committee/JPL Settlement Bermuda Court Order, the Debtors, the Committee, the Wind Down Debtors and Liquidating Trust shall irrevocably waive all rights to assert that any Segregated Cell or property in that Segregated Cell that was not mistakenly transferred to a Segregated Cell by a Debtor, Wind Down Debtor, and/or the Liquidating Trust is property of any Debtor's Estate, the Wind Down Debtors, or the Liquidating Trust; *provided* that the applicable Wind Down Debtors each shall retain its contractual shareholder or similar equity interest, if any, in each applicable Segregated Cell, subject to a full reservation of the rights of any Segregated Cell or the White Rock JPLs on behalf of such Segregated Cell and the Wind Down Debtors regarding any such interest.

131.    If the Committee/JPL Settlement Bermuda Court Order is filed:

*ACTIVE 695212060*

(a)    Notwithstanding anything to the contrary in the Plan or Confirmation Order, but subject to the Cedent Settlements and the related provisions found in paragraphs 109 through 128 of this Confirmation Order, any agreement by or determination of the Liquidating Trustee to settle, compromise, or otherwise resolve an objection to any Claim or to otherwise agree to such Claim's allowance, shall be without prejudice to (i) any judicial determination of whether a Claim of the White Rock JPLs is duplicative of that resolved claim and, therefore, whether such White Rock JPL Claim should be allowed in a reduced amount or disallowed and (ii) the right of the White Rock JPLs to object to any proposed distribution under the Plan on account of such resolved Claim that is asserted to be duplicative of a Claim of the White Rock JPLs, provided that the White Rock JPLs and their U.S. counsel shall receive not less than 14 days' notice of such distribution; and

(b)    As soon as practical after the Effective Date, the Liquidating Trustee shall establish a reserve in the amount of $400,000 (the "JPLs Fee Reserve") to cover the White Rock JPLs' fees and expenses to the extent, if any, (i) there are insufficient funds available from the White Rock general account or another source to satisfy such fees and expenses or (ii) the Bermuda Court determines, after notice to the applicable Cedent(s) with an opportunity to object and be heard, that a portion of such fees and expenses must be paid from a specific Segregated Cell rather than from the White Rock general account and such segregated Cell does not have sufficient funds to pay such fees and expenses.

132.    As of filing of the Committee/JPL Settlement Bermuda Order, the Debtors' motion for contempt [Docket No. 89] and motion for an order enforcing the automatic stay [Docket No. 15] with respect to the White Rock JPLs shall be dismissed, and the interim stay orders [Docket Nos. 47, 100, 119, and 143] with respect to the White Rock JPLs shall be vacated, in each instance

54

with prejudice. So long as White Rock does not contest the filing of the Committee/JPL Settlement Bermuda Court Order, the dismissal of the motion and vacatur of the interim stay orders referenced in the previous sentence shall apply to White Rock.

133.    As of filing of the Committee/JPL Settlement Bermuda Order, all objections of the Debtors and Committee to the White Rock JPLs' chapter 15 petition for White Rock and the related motion for provisional relief shall be withdrawn and the Committee, the Wind Down Debtors, and the Liquidating Trust shall not object to such relief.

134.    As soon as practicable after the Effective Date, the Liquidating Trustee, the Wind Down Advisory Board, and the White Rock JPLs shall meet to address how any litigation related to the Vesttoo fraud, discovery, and exchanges of documents shall be handled.

135.    The Committee or the Wind Down Advisory Board, as applicable, will arrange for regularly scheduled meetings with the White Rock JPLs. To the extent possible, such meetings will be scheduled to occur in connection with meetings of the Committee or Wind Down Advisory Board.

136.    As of filing of, and subject to, the Committee/JPL Settlement Bermuda Order, the Committee, the Wind Down Debtors, and the Liquidating Trust will not object to and to the extent reasonably necessary, will cooperate with any efforts of the White Rock JPLs: (1) seeking standing from an Israeli Court in any proceeding regarding any Debtor and/or its assets or liabilities; and (2) pursuing recognition in Israel of White Rock's pending proceeding in the Supreme Court of Bermuda (the "Bermuda Court"). The White Rock JPLs will not object to a request by the Debtors, Committee, the Wind Down Debtors, or the Liquidating Trust to obtain recognition and/or enforcement of the Plan and Confirmation Order from an Israeli Court so long as that Plan and Confirmation Order are consistent with the Committee/JPL Settlement. The Liquidating Trustee,

55

the Wind Down Advisory Board, and the White Rock JPLs will participate in good faith discussions regarding relief in Israel.

137. If any of the Liquidating Trustee, the Wind Down Advisory Board, or the White Rock JPLs determine that the parties have reached an impasse with respect to any matter regarding (a) how any litigation related to the Vesttoo fraud, discovery, and exchange of documents hall be handled, as provided in paragraph 134 of this Confirmation Order, or (b) relief in Israel, as provided in paragraph 136 of this Confirmation Order, such party shall provide notice of the impasse to the other parties. Upon such notice, the parties shall submit their dispute to mediation conducted by Christopher S. Sontchi or, if Judge Sontchi is not available, by a mediator agreed to by such parties or ordered by the Bankruptcy Court.

138. Any dispute regarding the interpretation or implementation of the Committee/JPL Settlement shall initially be subject to mediation as provided in paragraph 137 of this Confirmation Order, and if such mediation is unsuccessful, then the dispute may be submitted to the Bankruptcy Court and, if appropriate, jointly with the Bermuda Court.

139. With respect to the Committee/JPL Settlement Bermuda Court Order:

(a)      The terms of the Committee/JPL Settlement are subject to the filing of the Committee/JPL Settlement Bermuda Court Order. As set forth in Article XIV.B of the Plan, the filing of the Bermuda Order and it not being vacated or stayed prior to the Effective Date, shall be conditions precedent to the occurrence of the Effective Date, and, subject to subsection (b) of this paragraph 139, such conditions precedent may not be waived by any party without the consent of the White Rock JPLs. The White Rock JPLs shall use reasonable best efforts to obtain the filing of the Committee/JPL Settlement Bermuda Court Order on or before the later of 21 days after the entry of this Confirmation

Order and March 22, 2024 (the "Outside Date"), including by seeking to file the requisite application on or before the later of March 4, 2024 and three business days after entry of this Confirmation Order.

(b)    If the Outside Date occurs before (a) the filing of the Committee/JPL Settlement Bermuda Court Order or (b) a stay being in place with respect to the Committee/JPL Settlement Bermuda Court Order and such stay not being lifted or vacated, then the Committee shall seek a status conference with the Bankruptcy Court to discuss next steps related to the Plan, including potential Bankruptcy Court and/or Bermuda Court (if appropriate) assistance with respect to filing of the Committee/JPL Settlement Bermuda Court Order, or lifting or vacating the stay, as applicable. If the Bermuda Court denies the filing of the Committee/JPL Settlement Bermuda Court Order or there is a stay that is pending after the Outside Date, then (i) the objections to confirmation of the Plan filed by the White Rock JPLs [Docket Nos. 606 and 721] (the "JPL Confirmation Objections") and the objections to the Cedent Settlements [Docket No. 737] (the "JPL Settlements Objection") shall be reinstated, with the White Rock JPLs having three business days to update the JPL Confirmation Objections to reflect subsequent Plan amendments, the terms of the Confirmation Order, any proposed settlements with Cedents, and any related matters, and, thereafter, if necessary, be heard on such amended objection; (ii) the White Rock JPLs and the Committee shall use commercially reasonable efforts to negotiate mutually agreeable amendments to the Plan and/or Confirmation Order to the extent necessary and reasonable to comply with the Bermuda Court's ruling or otherwise obtain filing of the Committee/JPL Settlement Bermuda Court Order, or resolving the stay, as applicable; and (iii) both the Effective Date and any resolution of entitlement to or distribution of funds

ACTIVE 695212060

pursuant to any Cedent settlement provided for in Articles VIII.F and XII.L.3(d) of the Plan shall not occur absent (A) written agreement between the White Rock JPLs and Committee resolving such issue, including an amendment to the Plan and/or this Confirmation Order to reflect compliance with the Bermuda Court's ruling or resolving the stay, as applicable, or (B) entry of an Order of the Bankruptcy Court overruling the JPL Confirmation Objections and Settlements Objection, as amended. If the Committee/JPL Settlement Bermuda Court Order is not filed, or if the Committee/JPL Settlement Bermuda Court Order is filed but stay, by the Outside Date, the parties agree (i) to seek an emergency hearing before the Bankruptcy Court on an expedited basis so as to rule on the reinstated JPL Confirmation Objections and Settlement Objection and (ii) if the JPL Confirmation Objections and Settlements Objection are overruled, the condition precedent to the Effective Date of the Plan in Article XIV.B.8 of the Plan shall be of no further force or effect. The White Rock JPLs shall not object to any request by, or standing of, the Committee or the Liquidating Trustee, as applicable, to intervene or otherwise participate in full in proceedings before the Bermuda Court relating the White Rock JPLs' request for filing of the Committee/JPL Settlement Bermuda Court Order.

(c)     The White Rock JPLs shall keep the Committee advised regarding the White Rock JPLs' progress to obtain the filing of the Committee/JPL Settlement Bermuda Court Order on or before the Outside Date. If at any point the Committee concludes, after first providing the White Rock JPLs with a reasonable opportunity to explain why it is not the case, that the White Rock JPLs are not using their reasonable best efforts to obtain entry of the Committee/JPL Settlement Bermuda Court Order on or before the Outside Date, the

58

parties agree to seek an emergency hearing before the Bankruptcy Court on that issue on an expedited basis as contemplated by this paragraph 139.

(d)     For the avoidance of doubt, and notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing in the Committee/JPL Settlement or the related provisions set forth in paragraphs 129 through 146, including this paragraph 139, shall be deemed to amend, waive, modify or supplement the terms of the Vesttoo Bay XXIV Settlement (as modified and limited by the Chaucer/White Rock JPLs Settlement), and the terms of the Vesttoo Bay XXIV Settlement and Chaucer/White Rock JPLs Settlement, together with the related provisions set forth in paragraphs 121 through 128, shall control with respect to the subject matter of the Vesttoo Bay XXIV Settlement and Chaucer/White Rock JPLs Settlement.

140.    The White Rock JPLs' consent to the Cedent Settlements is subject to the following:

(a)     with respect to the Vesttoo Bay XXIV Settlement, the terms of the Chaucer/White Rock JPLs Settlement;

(b)     with respect to the Vesttoo Bay XIX Settlement, section 8(b) of the Beazley/Porch Settlement shall be deemed amended to read in its entirety: "The Plan shall provide that the Restored Vesttoo Bay XIX Cash is transferred to a segregated account in the United States as soon as practical after the entry of the Confirmation Order and the Debtors shall use commercially reasonable efforts to do so by February 29, 2024, and, subject to the occurrence of the Effective Date of the Plan, that 50% of such Restored Vesttoo Bay XIX Cash shall be held by Vesttoo Bay XIX for the sole benefit of the Vesttoo Bay XIX Cedents, as their interests shall be determined"; and

ACTIVE 695212060

(c)     with respect to the Vesttoo Bay XIV Settlement and the Vesttoo Bay XIX Settlement, the following provisions:  (x) the White Rock JPLs' consent to the Vesttoo Bay XIV Settlement and the Vesttoo Bay XIX Settlement is subject to entry of the Committee/JPL Settlement Bermuda Court Order; and (y) Clear Blue and the Vesttoo Bay XIX Cedents shall be deemed to release any claims against the applicable Segregated Cell and the White Rock JPLs respecting any amounts paid to and any claims released by Clear Blue and the Vesttoo Bay XIX Cedents, as applicable.

141.    Subject to paragraph 140 of this Confirmation Order, the White Rock JPLs waive, on their own behalf and on behalf of the Chaucer Cell, (i) any Claims (including those set forth in the Proofs of Claim filed by the White Rock JPLs) of Chaucer or the Chaucer Cell against any Debtor or any Debtor's Estates, and (ii) all Claims with respect to the portion of the Vesttoo Bay XXIV Cash representing the Vesttoo Bay XXIV Distribution Amount.

142.    Notwithstanding any general requirement for claims to be filed based on rejection of an executory contract or otherwise be time barred, and subject to filing of the Committee/JPL Settlement Bermuda Court Order, each of the White Rock JPLs' Claims for each Segregated Cell shall be deemed to be amended to include an unliquidated Claim for damages based on any Debtor's rejection under the Plan of a contract with that Segregated Cell as a counterparty without the need to file a new or amended Claim. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Liquidating Trustee shall prioritize the resolution of Constructive Trust Claims and use its reasonable best efforts to resolve any such Constructive Trust Claims as soon as practicable. The Committee's or, after the Effective Date, the Liquidating Trustee's, financial advisor shall cooperate on responding to the White Rock JPLs' reasonable inquiries.

143.    Upon the Effective Date and subject to filing of the Committee/JPL Settlement Bermuda Court Order, the Committee and/or Liquidating Trustee shall provide the White Rock JPLs with access to or copies of all documents, including ESI, or other factual materials the Debtors have provided or any other party has produced to the Committee in connection with the Committee's Rule 2004 discovery unless subject to any applicable privilege or restriction. The provision of such information shall not be deemed as a waiver of any applicable privilege or the work product doctrine.

144.    The Committee and/or, after the Effective Date, the Liquidating Trustee will use commercially reasonable efforts to provide the White Rock JPLs, as promptly as possible, with financial materials in its control relating to settled and reasonably identifiable potential Constructive Trust Claims. The provision of such information shall not be deemed as a waiver of any applicable privilege or the work product doctrine.

145.    Neither the (i) consent, consultation (including in Article XII.L.2 and XII.L.3 of the Plan), cooperation (including in paragraphs 134 and 136 of this Confirmation Order), information (including in Article XII.L.3(e) of the Plan and paragraphs 143 and 144 of this Confirmation Order), and similar rights in the Committee/JPL Settlement that inure to the benefit of the White Rock JPLs (the "JPL Rights") nor the (ii) JPLs Fee Reserve shall inure to any other party, including, but not limited to, White Rock Insurance (SAC), Ltd. or any of its affiliates (collectively, "White Rock"). For the avoidance of doubt, if the White Rock JPLs are no longer court-appointed joint provisional liquidators or joint liquidators for White Rock or any of its Segregated Cells, White Rock shall not succeed to the JPL Rights or the rights to the JPLs Fee Reserve.

146.    For the avoidance of doubt, reference to the Committee in the Committee/JPL Settlement does not bind the individual members of the Committee, and each member of the Committee reserves all rights.

**BB.    Oracle America Cure Claim.**

147.    The Cure Claim of Oracle America, Inc., as successor in interest to NetSuite, Inc. ("Oracle"), shall be as set forth in the Administrative Expense Claim filed by Oracle, Claim No. 30002, which shall be paid in full in Cash by the Debtors on or prior to the Effective Date.

**CC.    Dissolution of the Creditors' Committee.**

148.    Except to the extent provided in the Plan, on the Effective Date, the Committee shall dissolve, and the members of the Committee and their respective officers, employees, counsel, advisors and agents shall be released and discharged from further authority, duties, responsibilities and obligations related to and arising from and in connection with these Chapter 11 Cases; *provided, however*, that following the Effective Date the Committee shall continue in existence and have standing and a right to be heard solely to pursue Professional Fee Claims in accordance with Article VII.B of the Plan. Following the completion of the remaining duties of the Committee set forth above, the retention or employment of the Committee's respective attorneys, accountants, and other agents shall terminate.

**DD.    Effect of Non-Occurrence of Conditions to the Effective Date.**

149.    Notwithstanding the entry of this Confirmation Order, if the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Combined Disclosure Statement and Plan shall:  (a) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

*ACTIVE 695212060*

**EE.**     **Good Faith**

150.     The Plan Proponent and all of its respective managers, members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates, and representatives will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, transactions, and transfers contemplated thereby and (ii) take the actions authorized and directed by this Confirmation Order.

151.     Notwithstanding anything to the contrary set forth in this Order, any directive to or of the Debtors that requires an action or consent by a third party shall be deemed satisfied upon the Debtors' exercise of commercially reasonable best efforts.

**FF.**     **Separate Orders**

152.     This Confirmation Order is and shall be deemed a separate Confirmation Order with respect to each of the Debtors' Estates in each Debtor's separate Chapter 11 Case for all purposes.

**GG.**     **Post-Confirmation Modification of the Plan and the Plan Supplement.**

153.     The Plan Proponent is hereby authorized to amend or modify the Plan or the Plan Supplement at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code, without further order of this Court.

**HH.**     **Notice of Entry of the Confirmation Order and the Effective Date.**

154.     Upon satisfaction or waiver of all conditions precedent to the Effective Date in Article XIV.B of the Plan and the consent of the Plan Proponent to the occurrence of the Effective Date, the Plan Proponent shall file notice of the entry of the Confirmation Order and the Effective Date with this Court and shall serve or cause to be served a notice substantially in the form attached hereto as **Exhibit B** (the "Effective Date Notice") upon all parties that received notice of the Combined Hearing in the same manner and under the same terms as are set forth in Paragraph 25

63

of the Solicitation Procedures Order with respect to the Objection Deadline and Hearing Notice. The form of Effective Date Notice is hereby approved. Service of the Effective Date Notice as provided herein shall be good and sufficient notice of the entry of the Confirmation Order and the occurrence of the Effective Date under the Bankruptcy Rules, including Bankruptcy Rule 3020(c)(2).

## II.    Final Order.

155.    This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

**Dated: February 29th, 2024**
**Wilmington, Delaware**

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**

*ACTIVE 695212060*